IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔗𝔥𝔦𝔯𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

## No. 23-2062

_____

### GEA MECHANICAL EQUIPMENT US, INC.,

*Appellant,*

*vs.*

### FIRST STATE INSURANCE COMPANY, ET AL.,

*Appellees.*

_____

*On appeal from the final order entered in the United States District Court for the District of New Jersey dated May 11, 2023, at No. 2:20-cv-09741*

_____

## BRIEF FOR APPELLANT
## GEA MECHANICAL EQUIPMENT US, INC.
## AND JOINT APPENDIX VOLUME I
## (A000001- A000021)

_____

Donald W. Kiel (NJ Bar # 014371982)
One Newark Center
Tenth Floor
Newark, New Jersey 07102-5252
973-848-4000 (telephone)
973-848-4001 (facsimile)
Donald.Kiel@klgates.com

Joseph C. Safar (PA Bar # 78205)
Erin D. Fleury (PA Bar # 320545)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
412-355-6500 (telephone)
412-355-6501 (facsimile)
Joseph.Safar@klgates.com
Erin.Fleury@klgates.com

**K&L Gates LLP**

Counsel for Appellant GEA Mechanical Equipment US, Inc.

# **Table of Contents**

**Page**

I. JURISDICTIONAL STATEMENT ...................................................................... 1

II. STANDARD OF REVIEW ............................................................................... 1

III. ISSUES PRESENTED ..................................................................................... 2

IV. STATEMENT OF RELATED CASES ............................................................... 4

V. STATEMENT OF THE CASE .......................................................................... 4

    A.       Procedural Background ........................................................................... 5

    B.       Factual Background ................................................................................. 7

            1.       The Underlying Thornton Action ..................................................... 7

            2.       Insurance Notice of the Thornton Action ....................................... 9

            3.       Absence of Prejudice ................................................................... 13

VI. SUMMARY OF THE ARGUMENT ................................................................ 17

    A.       Breach of the Excess Policies' Notice Provisions ................................ 18

    B.       Appreciable Prejudice ........................................................................... 19

VII. ARGUMENT ................................................................................................ 21

    A.       Argument No. 1: The District Court Erred in Concluding Notice Was Late As to the Excess Policies ........................................................ 23

    B.       Argument No. 2: The District Court Erred in Applying New Jersey's Appreciable Prejudice Standard in Two Significant, Related Ways ......................................................................................... 28

            1.       First, the District Court Ignored Binding Precedent and Erroneously Held that Appreciable Prejudice Exists as a Matter of Law when Notice Is Provided After a Judgment, Verdict, or Settlement ................................................................. 29

            2.       Second, the District Court Erroneously Concluded that an Insurer Can Meet Its Appreciable Prejudice Burden Simply By Establishing that it Lost an Opportunity to Participate in the Underlying Defense ................................................................. 36

    C.       GEA Mechanical Is Entitled to Summary Judgment on the Insurers' Late-Notice Affirmative Defense ........................................... 43

    D.       This Court Should Remand the Case to Resolve the Remaining Defenses ............................................................................................... 46

VIII. CONCLUSION ............................................................................................ 47

# Table of Authorities

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Grillon*,
251 A.2d 777 (N.J. Super. Ct. App. Div. 1969) ...................................... 29

*British Ins. Co. of Cayman v. Safety Nat. Cas.*,
335 F.3d 205 (3d Cir. 2003) ...................................... 28

*Carter-Wallace, Inc. v. Admiral Ins. Co.*,
712 A.2d 1116 (N.J. 1998) ...................................... 24

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*,
817 F. Supp. 1136 (D.N.J. 1993), *aff'd in part and remanded on other grounds,* 89 F.3d 976 (3d Cir. 1996) ...................................... 40

*Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
89 F.3d 976 (3d Cir. 1996) ...................................... 20, 30, 44

*Contl. Ins. Co. v. Beecham, Inc.*,
836 F. Supp. 1027 (D.N.J. 1993) ...................................... 28

*Cooper v. Gov't Emps. Ins. Co.*,
237 A.2d 870 (N.J. 1968) ...................................... 18, 40

*Cranbury Brick Yard v. U.S.*,
943 F.3d 701 (3d Cir. 2019) ...................................... 1

*CSR Ltd. v. Cigna Corp.*, No. 95-2947 (HAA),
2006 WL 436113 (D.N.J. Feb. 22, 2006) ...................................... 23, 27

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ...................................... 34

*Esurance Ins. Co. of New Jersey v. Laplante*, No. SOM-L-001506-17,
2019 WL 13443463 (N.J. Super. Ct. Law Div. 2019) ...................................... 41

*Gazis v. Miller*,
874 A.2d 591 (N.J. Super. Ct. App. Div. 2005), *aff'd,* 892 A.2d 1277
(N.J. 2006) ...................................... 44

*Hatco Corp. v. W.R. Grace & Co.*,
801 F. Supp. 1334 (D.N.J. 1992) ...................................... 23

*Jackson v. N.J. Indem. Ins. Co.*, No. L–0497–08,
2011 WL 2848586 (N.J. Super. Ct. App. Div. July 20, 2011) ...................................... 31

*Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.*,
88 F. Supp. 2d 360 (D.N.J. 2000) ...................................... 29

*KnightBrook Ins. Co. v. Tandazo-Calopina*,
275 A.3d 474 (N.J. Super. Ct. App. Div. 2022) ...................................... *passim*

*Martin v. Fireman's Fund Ins. Co.*, No. A-4206-09T1,
   2011 WL 1584333 (N.J. Super. Ct. App. Div. Apr. 28, 2011)................................ 35

*Morales v. National Grange Mut. Ins. Co.*,
   423 A.2d 325 (N.J. Super. Ct. Law Div. 1980) ....................................*passim*

*N.J. Dep't of Env't Prot. v. DiFlorio*, No. L-2070-02,
   2007 WL 4553046 (N.J. Super. Ct. App. Div. Dec. 28, 2007) ..................... 23, 31, 44

*Nat'l Union Fire Ins. Co. v. Becton, Dickinson & Co.*,
   No. 2:14-cv-04318-EP-JSA, 2018 WL 627378 (D.N.J. Jan. 30, 2018)................... 46

*Nat'l Union Fire Ins. Co. v. Becton, Dickinson & Co.*,
   No. 2:14-cv-04318-EP-JSA, Doc. 315 (D.N.J. July 12, 2022)..................... 31, 39, 40

*Sagendorf v. Selective Ins. Co. of Am.*,
   679 A.2d 709 (N.J. Super. Ct. App. Div. 1996) ...................................... 28

*Solvents Recovery Serv. of New England v. Midland Ins. Co.*,
   526 A.2d 1112 (N.J. Super. App. Div. 1987) .................................... 31, 42

*Talarico v. Public Partnerships, LLC*,
   No. 20-1413, 2020 WL 7137072 (3d Cir. Dec. 7, 2020)........................... 1

*Thornton v. Alfa Laval, Inc., et al.*,
   No. 17-006018 CA 42 ........................................................... 4

*Transportes Ferreos de Venezuela II CA v. NKK Corp.*,
   239 F.3d 555 (3d Cir. 2001)............................................... 1, 29, 42

*Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*,
   No. 14-4410, Doc. 63 (D.N.J. July 12, 2016) ...................................... 31

**Statutes**

28 U.S.C. § 1291............................................................. 1

28 U.S.C. § 1332............................................................. 1

**Other Authorities**

Cir. L.A.R. 28.1 (2011) ...................................................... 4

CORNELL LAW SCHOOL LEGAL INFORMATION INSTITUTE,
   https://www.law.cornell.edu/wex/consent_decree................................. 20

## I.  **JURISDICTIONAL STATEMENT**

The United States District Court for the District of New Jersey (the "District Court") had diversity jurisdiction pursuant to 28 U.S.C. § 1332. The District Court's order, filed May 11, 2023, disposed of all claims with respect to all Parties.[1] This Court has jurisdiction over the final order of the District Court under 28 U.S.C. § 1291. Appellant GEA Mechanical Equipment US, Inc. ("GEA Mechanical") filed a timely notice of appeal on June 9, 2023.[2]

## II.  **STANDARD OF REVIEW**

This Court's review is plenary because GEA Mechanical's bases for appeal all arise from the District Court's ruling on the Parties' cross-motions for summary judgment and this Court reviews "the grant or denial of summary judgment de novo." *Cranbury Brick Yard v. U.S.*, 943 F.3d 701, 708 (3d Cir. 2019); *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) ("Our review of the district court's decision on the motions for summary judgment is plenary."). Grants of summary judgment are affirmed only "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Talarico v. Public Partnerships, LLC*, No. 20-1413, 2020 WL 7137072, *2 (3d Cir. Dec. 7, 2020) (citing Fed. R. Civ. P. 56(a)) (original punctuation omitted).

---

[1] *See* Joint Appendix ("J.A."), at A000003-04 (Order).

[2] J.A., at A000001-02 (Notice of Appeal).

## III.    <u>ISSUES PRESENTED</u>

1.    Whether the District Court erred by improperly drawing factual inferences against GEA Mechanical, the non-moving party, to hold that the Excess Insurers[3] had met their burden of demonstrating a breach of the Excess Policies' notice provisions under New Jersey late-notice law;

2.    Whether the District Court erred by improperly holding that the Insurers had met their burden of demonstrating appreciable prejudice as a matter of law under both the Primary Policies and Excess Policies under New Jersey's late-notice law. Specifically, whether the District Court erred by ignoring relevant precedent, including a binding Third Circuit decision, and improperly making factual findings that the Parties disputed;

3.    Whether the District Court erred by denying GEA Mechanical's motion for summary judgment on the Insurers' late-notice affirmative defense given that the undisputed record contains no non-speculative evidence of appreciable prejudice sufficient to sustain a late-notice defense under New Jersey law.

---

[3] As used herein, the term "Insurers" refers to Appellees First State Insurance Company ("First State"), Hartford Accident and Indemnity Company ("Hartford A&I"), Hartford Fire Insurance Company ("Hartford Fire," and collectively with First State and Hartford A&I, "Hartford"), Wellfleet New York Insurance Company (as successor in interest to Atlanta International Insurance Company) ("AIIC"), and Continental Insurance Company ("Continental"). The term "Primary Insurers" refers to Hartford A&I and Hartford Fire. The term "Primary Policies" refers to Policies issued by the Primay Insurers. The term "Excess Insurers" refers to First State, AIIC, and Continental. The term "Excess Policies" refers to Policies issued by the Excess Insurers.

*Designation In Record In Which Issue Nos. 1-3 Were Raised,*

*Objected To, And Ruled Upon*: These issues were the subject of motions

and cross-motions for summary judgment upon which the District Court

ruled in its opinion dated May 11, 2023. *See* ECF 57-60 (summary

judgment briefs and supporting papers), 73-74 (District Court's opinion and

order).[4] Portions of the Parties' summary judgment briefing and supporting

documents were filed under seal with the District Court and have therefore

been provided to this Court in Volume 2 of the Joint Appendix. Of particular

note, the Parties' briefing is located at the following page ranges of the

Joint Appendix:

- GEA Mechanical's Brief in Support of its Motion for Summary Judgment (ECF 57-1) is at A000045-88;

- The Insurers' Brief in Support of their Motion for Summary Judgment and in Opposition to GEA Mechanical's Motion (ECF 58-1) is at A003364-431;

- GEA Mechanical's Reply Brief in Further Support of its Motion for Summary Judgment and Brief in Opposition to the Insurers' Motion for Summary Judgment (ECF 59) is at A003982-4027; and

- The Insurers' Reply Brief in Further Support of their Motion for Summary Judgment (ECF 60) is at A004079-103.

---

[4] Initially, the District Court entered an unredacted version of its opinion to the public docket at ECF 73 (J.A., at A000022-38). Upon joint request of all Parties, because the opinion contained information the Parties had submitted to the District Court under seal, the District Court sealed the original opinion and issued a redacted version of the opinion at ECF 77 (J.A., at A000005-21).

IV.  **STATEMENT OF RELATED CASES**

GEA Mechanical is aware of no related cases as contemplated under 3d Cir. L.A.R. 28.1 (2011).

V.  **STATEMENT OF THE CASE**

This insurance coverage dispute (the "Litigation") arises out of GEA Mechanical's request for indemnification in connection with the confidential settlement of an underlying asbestos bodily injury lawsuit captioned *Thornton v. Alfa Laval, Inc., et al.*, No. 17-006018 CA 42, Circuit Court for Miami-Dade County, Florida (the "Thornton Action").

GEA Mechanical seeks coverage under Primary Policies and Excess Policies (collectively, the "Policies") issued by the Insurers, or their predecessors, to GEA Mechanical's predecessor, Centrico Inc. ("Centrico").[5] The Policies cover periods from May 15, 1979 to December 31, 1995, which the Parties agree are the policy periods triggered by the Thornton Action. The Parties stipulated to the existence and material terms of the Policies as well as to the applicable allocation of the Thornton Action to each triggered policy period.[6] The Policies each contain provisions

---

[5] GEA Mechanical is a successor to Centrico and is entitled to all of the same rights and obligations under the Policies as Centrico. J.A., at A003455 (Insurers' Response to GEA Mechanical's Statement of Material Fact ("SOMF")), at ¶ 4 ("Admitted that GEA is successor to Centrico and thus entitled to the same rights and obligations under the Policies as Centrico."). GEA Mechanical's parent company acquired Centrico in October 1994 and Centrico was later merged into the company that is now known as GEA Mechanical. *See* J.A., at A003490-93 (Vick Affidavit), at ¶ 4.

[6] *See generally* J.A., at A000579-585 (AIIC Stipulation); J.A., at A000610-618 (Continental Stipulation); J.A., at A000650-659 (Hartford Stipulation);

regarding the timing of notice of claims to the insurers.[7] There is no dispute that the Policies are governed by New Jersey law.[8]

## A.  <u>Procedural Background</u>

As discussed in Section V.B.2 below, the Insurers each disclaimed their coverage obligations to GEA Mechanical for the Thornton Action, primarily on the basis that GEA Mechanical's notice of the Thornton Action was allegedly unreasonably late. GEA Mechanical initiated this insurance coverage action in the Superior Court of New Jersey, Law Division, on August 6, 2019, and it was removed to the District Court on July 31, 2020.

The instant appeal arises from the District Court's ruling on the Parties' post-discovery cross-motions for summary judgment on the Insurers' affirmative defense of late notice. The District Court denied GEA Mechanical's motion for summary judgment and granted the Insurers' motion for summary judgment.[9]

The Insurers argued that they have no obligations to indemnify GEA Mechanical for the settlement of the Thornton Action because notice was

---

J.A., at A000130-138 (Allocation Stipulation).

[7] For the Court's convenience, the notice provisions for the Policies are collected at J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶ 31. Particularly relevant for the present appeal, each of the Excess Policies include a notice provision that requires notice only once the insured knows of a claim or an occurrence that is "reasonably likely" to implicate the pertinent policy. J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶¶ 31(b)-31(d) (setting forth the Excess Policies' notice provisions).

[8] *See* J.A., at A000130-138 (Allocation Stipulation), at ¶ 2.

[9] J.A., at A000022-38 (District Court's Opinion); J.A., at A000003-04 (Order).

provided after a verdict.[10] GEA Mechanical countered that, under long-standing New Jersey law, the Insurers must establish more than just that notice was late, and that, on the record before the District Court, the Insurers failed to establish the additional requisite factual showing of resulting "appreciable prejudice."[11]

GEA Mechanical also argued that the Excess Insurers failed to meet their threshold burden of showing that GEA Mechanical breached the notice provisions of their Excess Policies, which require notice of a claim only if and when it is "reasonably likely" to implicate each Policy.[12]

After the close of discovery, the Parties filed cross-motions for summary judgment, focusing on the Insurers' late-notice affirmative defense.[13] On May 11, 2023, without a hearing or oral argument, the District Court entered an opinion and order denying GEA Mechanical's motion for summary judgment and granting the Insurers' motion for summary judgment.[14]

---

[10] *E.g.*, J.A., at A003364-431 (Insurers' Opening Brief), at A003394-407 (arguing a showing of appreciable prejudice is not required); J.A., at A004079-103 (Insurers' Reply Brief), at A004088-99 (same).

[11] *E.g.*, J.A., at A000045-88 (GEA Mechanical's Opening Brief), at Section III.C; J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at Section II.A.

[12] J.A., at A000045-88 (GEA Mechanical's Opening Brief), at Section III.C.3; J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at Section II.C.1.

[13] *See generally* J.A., at 000039-3359 (GEA Mechanical's Motion for Summary Judgment and supporting papers); J.A., at 003360-981 (Insurers' Opposition and Cross Motion); J.A., at 003982-4078 (GEA Mechanical's Opposition and Reply), and J.A., at 004079-109 (Insurers' Reply).

[14] J.A., at A000022-38 (District Court's Opinion); J.A., at A000003-04 (Order).

The District Court held that (1) notice was late with respect to all of Policies (Primary and Excess); and (2) the Insurers had established appreciable prejudice as a matter of law, solely on the basis that they irretrievably lost the "opportunity to participate in the defense of the Thornton Action until after a verdict and judgment was entered."[15] On June 9, 2023, GEA Mechanical filed this appeal.

### B.    Factual Background

#### 1.    The Underlying Thornton Action

Charles and Constance Thornton (the "Thorntons") filed the Thornton Action in March 2017.[16] The Thorntons alleged negligence and strict liability claims arising from Charles Thornton's alleged exposure to asbestos-containing brakes and clutches used in laboratory equipment (centrifuges or separators) supplied to his employer by Centrico.[17]

GEA Mechanical retained competent and experienced counsel, the law firms of Miles & Stockbridge and Shapiro Blasi, to defend the case.[18] For a number of reasons, GEA Mechanical evaluated the Thornton claim as relatively weak and defensible.[19] The Thorntons made a single pre-trial

---

[15] J.A., at A000022-38 (District Court's Opinion), at A000034-35, A000037-38.

[16] J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶ 7.

[17] *Id.* at ¶ 10.

[18] *Id.* at ¶ 8.

[19] *See* J.A., at A000172-207 (Deposition of Stuart Weinstein), at 77:15-92:17 (GEA Mechanical's defense counsel from the Thornton Action testifying as to numerous weaknesses of the case); *see also* J.A., at A000139-55

settlement demand, for $1.5 million, which GEA Mechanical perceived to

be unreasonably high.[20] The Insurers' expert in this case agreed that the

"demand of $1.5 million was high[.]"[21] Subsequently, GEA Mechanical

---

(Interrogatory Answers), at No. 3 (outlining factors considered by GEA Mechanical's counsel in evaluating the Thornton Action).

For example, some of the factors that GEA Mechanical considered included, but are not limited to, the following: (1) GEA Mechanical had defenses based on the implausibility of Mr. Thornton's exposure theory, which alleged Mr. Thornton was exposed to asbestos-containing brake dust inside a highly-regulated pharmaceutical manufacturing "clean room" as a result of performing maintenance, which was not within his job description, on centrifuge components that he could neither recall nor describe. *E.g.*, J.A., at 003855-88 (Expert Report of Michael N. Weathersby), at A003864. Indeed, Mr. Thornton's testimony regarding his work would have required the total number of replacement parts used by Mr. Thornton to have accounted for 60% of all Centrico brakes sold in the U.S. at the time, even though his employer only had 0.6% of the machines using those parts. *Id.* GEA Mechanical also had legal defenses under the applicable laws, such as the required higher burden of proof to establish seller liability under Florida statute. *Id.* GEA Mechanical had very strong factual defenses to causation and ultimately presented quality industrial hygiene and dose evidence from well-known experts. *Id.* at A003865. The epidemiology and science also favored GEA Mechanical, especially given the nature of the product at issue (including the chrysotile fiber type, composition, size, and usage/function). *Id.* at A003864-65. GEA Mechanical's counsel was also aware that lead counsel for the Thorntons had limited experience and had only led the trial of one other asbestos case, which resulted in a defense verdict. *Id.* at A003864. Finally, GEA Mechanical also had defenses based on potential alternative exposures, including employment gaps and evidence of shipyard work. J.A., at A000139-55 (Interrogatory Answers), at No. 3.

[20] J.A., at A000172-207 (Deposition of Stuart Weinstein), at 77:17-24 (testifying as to GEA Mechanical's counsels' view of the initial $1.5 million demand as being unreasonably high).

[21] J.A., at A000208-220 (Report of Elizabeth O'Neill), at A000215.

made a series of increasing pre-trial settlement offers to the Thorntons,[22] which were all rejected or ignored by the Thorntons.[23]

The Thornton Action went to trial in June 2019. On June 17, 2019, the jury returned a classic "runaway" verdict against GEA Mechanical in the total amount of $70.102 million in compensatory damages.[24] A final judgment in that amount was entered against GEA Mechanical two days later on June 19, 2019.[25] GEA Mechanical timely filed post-trial motions and prepared to appeal the judgment. With post-trial motions and a potential appeal pending, GEA Mechanical and the Thorntons entered into a confidential settlement agreement to resolve the claim.[26]

### 2.   Insurance Notice of the Thornton Action

Upon learning of the Thornton Action, GEA Mechanical made "a good-faith effort … to identify potentially relevant insurers and to notify all such insurers of the Thornton claim."[27] At that time, representatives of GEA

---

[22] Other than the $1.5 million demand, which was made as part of the public record in the Thornton Action, the amounts of the various settlement offers and demands, as well as the ultimate settlement amount, are confidential. Specific details regarding those settlement negotiations are set forth in, among other places, the un-redacted version of GEA Mechanical's SOMF, which has been filed under seal in Volume 2 of the Joint Appendix. *See, e.g.*, J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶¶ 12-19 (setting forth details of settlement efforts).

[23] J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶¶ 12-19.

[24] *Id.* at ¶ 17.

[25] *Id.*

[26] *Id.* at ¶ 18.

[27] J.A., at A004073-78 (Declaration of Jamieson Greig in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Insurers' Motion for Summary Judgment (the "Greig Decl.")), at ¶¶ 2-5 (declaring that

Mechanical searched the company's files for insurance policies, reviewed the historic Centrico acquisition files, and reached out to the accountant for the sellers of Centrico to ask about any pre-acquisition insurance policies.[28] GEA Mechanical's initial efforts only identified certain policies issued by non-Party insurers (AXA and HDI Global) after GEA Mechanical's 1994 acquisition of Centrico.[29] GEA Mechanical provided notice of the Thornton Action to those insurers, HDI Global and AXA (both of which ultimately denied coverage), on April 13, 2017.[30] Despite its good-faith efforts, GEA Mechanical did not initially identify any of the Policies issued by the Party-Insurers, which were all issued between 27 to 44 years prior and were all issued to Centrico before it was acquired by GEA Mechanical.[31]

After the runaway verdict, GEA made another attempt to locate evidence of insurance and it identified certain partial insurance files that

---

"a good-faith effort was made to identify potentially relevant insurers and to notify all such insurers of the Thornton claim.").

[28] J.A., at A000139-55 (Interrogatory Answers), at No. 5 (explaining the steps taken by GEA Mechanical to notify insurers of the Thornton Action).

[29] J.A., at A000139-55 (Interrogatory Answers), at No. 5 (explaining that "GEA Mechanical's efforts to identify potentially relevant insurance policies did not turn up historical coverage maintained by Centrico and, therefore, the notices sent out in April 2017 did not include such carriers"); *see also* J.A., at A004073-78 (Greig Decl.), at ¶¶ 2-5 and Exs. 1-2 (showing notice of the Thornton claim to HDI and AXA in April 2017).

[30] *See* J.A., at A004073-78 (Greig Decl.), at ¶¶ 2-5 and Exs. 1-2; *see also* J.A., at A000139-55 (Interrogatory Answers), at No. 5.

[31] *See* J.A., at A000139-55 (Interrogatory Answers), at No. 5 (explaining the steps GEA Mechanical took to notify insurers of the Thornton Action).

had been misfiled in Centrico's historical human resources files.[32] GEA

Mechanical then retained an insurance archaeologist,[33] which was able to

assist GEA Mechanical in potentially identifying certain of the Policies at

issue in this Litigation.[34] Based on this work, GEA Mechanical notified the

Insurers (or their claims agents)[35] roughly two months after the Thornton

trial and jury verdict, *i.e.*, while post-trial motions and a potential appeal

were pending and prior to the ultimate settlement of the Thornton Action.[36]

More specifically, on August 5 and 6, 2019, with post-trial motions

and a potential appeal in the Thornton Action pending, GEA Mechanical

---

[32] *See* J.A., at A000139-55 (Interrogatory Answers), at No. 5.

[33] *See id*.

[34] Even with the assistance of the insurance archaeologist, the evidence from GEA Mechanical's own files was very limited and primarily consisted of historical claims files, not copies of the Policies. It was only through discovery of the Insurers', other insurers', and third-parties' files in this Litigation that relatively complete copies of the Policies were identified. *See generally* J.A., at A000579-2913 (Policy Stipulations and Policies) (showing the "best and most complete evidence" of the Policies came exclusively from the Insurers' document productions in this Litigation).

[35] Although not relevant for the current appeal, there is a dispute regarding whether Continental received notice at that time or several months after the settlement. However, there is no dispute that Continental's claims handler, Resolute Management Inc. ("Resolute"), which also handles claims for co-defendant Insurer AIIC, had received notice of the Thornton Action at this time and that Resolute employed the same claims handling procedures for both Insurers.

[36] J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶ 23.

notified Hartford and AIIC of the Thornton Action.[37] AIIC handled the claim

through Resolute, which is also the claim handling agent for Continental.[38]

Following this notice, GEA Mechanical provided Hartford and

Resolute with extensive information regarding the Thornton Action and

invited them to participate in the case, including through conferences with

GEA Mechanical and its defense counsel and by setting up an online "data

room."[39] On September 16, 2019, GEA Mechanical participated in a

mediation with the Thorntons, of which it made and kept the insurers

apprised. GEA Mechanical informed Hartford and Resolute of the

mediation and the resulting proposed settlement and the Insurers did not

participate or object.[40]

Through discovery in this Litigation, GEA Mechanical identified

additional insurers, provided notice to them on a rolling basis, and

amended its complaint in this Litigation.[41] Several insurers were voluntarily

---

[37] *Id.* at ¶ 22; J.A., at A000368-421 (Notice to AIIC); J.A., at A000422-24 (Notice to Hartford).

[38] J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶ 27 (Resolute handled the Thornton claim in the same way for both AIIC and Continental).

[39] J.A., at A000482-83 (Email providing "data room" access to Hartford); J.A., at A000484-86 (Email providing access to Resolute/AIIC); J.A., at A000487-88 (Email providing Insurers with post-trial motions papers and hearing transcript); J.A., at A000489-92 (Email providing information regarding the case and the post-trial mediation).

[40] J.A., at A000493-95 (Email providing draft settlement agreement to Insurers); J.A., at A000496-98 (letter from Resolute stating AIIC would not be participating in the mediation).

[41] *See, e.g.*, J.A., at A000510-78 (letter to Continental explaining GEA Mechanical had recently learned that Continental had issued coverage to Centrico).

dismissed from this Litigation because the settlement amount did not ultimately implicate their excess policies; however, on January 7, 2020, GEA Mechanical notified Continental, which also handled the claim through Resolute, and which similarly denied coverage based on late notice.[42]

Just like in the prior asbestos cases, *Johnson* and *Mazzaia*, involving certain of the Insurers (discussed in Section V.B.3, below), at no time between when the Insurers received notice and the settlement of the Thornton Action did the Insurers provide any strategic input or otherwise become involved in the case. They instead chose to decline coverage and to advise GEA Mechanical to "act in its best interests with respect to the settlement Agreement for the Thornton matter."[43]

### 3. Absence of Prejudice

The record contains no evidence of appreciable prejudice to the Insurers. The Insurers do not contend that they would have objected to the law firms that defended the Thornton Action (in fact, Hartford approved Miles & Stockbridge to successfully defend GEA Mechanical in two prior asbestos cases), nor do they contend they would have achieved a better litigated outcome at trial.[44] The Insurers do not argue that they would have

---

[42] *Id.*; *see also* ECF 52, at 9 (Continental counterclaim).

[43] J.A., at A000493-95 (Hartford's response to GEA Mechanical's request for approval of the Thornton Action settlement); J.A., at A000499-506 (September 20, 2019 letter from Hartford denying coverage); J.A., at A000507-09 (September 24, 2019 letter from Resolute/AIIC denying coverage).

[44] J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶ 27; J.A., at A002914-88 (O'Neill Deposition), at 267:3-5 (testimony of one of the

done anything differently from what GEA Mechanical did after the runaway verdict.[45] Instead, the Insurers' only claims of alleged appreciable prejudice relate to the pre-trial phase of the Thornton Action where they speculate that, if they had received earlier notice, they would have "brought their extensive experience to bear to achieve a better result" by settling the action for an unquantified amount prior to trial.[46]

As to this speculative assertion, the Insurers neither claimed nor produced any evidence that they would have offered anything close to $1.5 million demanded by the Thorntons.[47] Nor do the Insurers claim they would have made settlement offers greater than the highest pre-verdict offer that

---

Insurers' experts that "it would have been very difficult to get a defense verdict in this case"); J.A., at A002989-3119 (Heinze Deposition), at 160:9-13 (testimony of the Insurers' other expert that: "Q: Are you opining that if the insurers were involved in Thornton, the would have tried Thornton to a defense verdict had it not settled? A: No.").

[45] To the contrary, both Hartford and Resolute had the opportunity to become involved in the case at that time and declined to do so.

[46] J.A., at A003364-431 (Insurers' Opening Brief), at A003410-11 (claiming they "would have brought their extensive experience to bear to achieve a better result" and discussing testimony that the Insurers would have "taken a more proactive approach" to settlement discussions "in order to achieve a pre-trial settlement"); *see also* J.A., at A003432-53 (Insurers' SOMF), at ¶ 101 (discussing the Insurers' corporate testimony claiming they would have "brought the 'weight of their experience' and knowledge in defending asbestos claims … to provide 'an evaluation that perhaps would have resulted in a better settlement'").

[47] J.A., at A000318-362 (Deposition of Timothy Brady), at 62:14-17 (Hartford's corporate witness testifying that Hartford was not likely to have paid $1.5 million to settle the Thornton Action); J.A., at A000426-481 (Deposition of Thomas Barriball), at 121:15-21 (AIIC and Continental's corporate witness testifying that Continental/AIIC have no ability to evaluate whether they would have paid $1.5 million to settle the Thornton Action).

GEA Mechanical actually made and which the Thorntons did not accept.[48] The Insurers' own expert admitted that "[i]t's possible" that the Thorntons ignored GEA Mechanical's highest settlement offers because they had no intention to settle.[49] Thus, there is no competent record evidence suggesting that a reasonable pre-trial settlement was possible at an amount the Insurers, if they were involved, would have paid.[50] Stated otherwise, the record supports only the conclusion that a trial was inevitable, whether or not the Insurers were involved.

Further, the record contains evidence refuting any suggestion that the Insurers would have become involved to achieve a better result. Despite claiming to have "extensive experience in defending and resolving asbestos bodily injury claims,"[51] the Insurers did not identify a single comparable case demonstrating anything that they would have done differently, nor were their experts' reports informed by any specific such examples.[52] In fact, the <u>only</u> evidence produced in this Litigation regarding

---

[48] *See, e.g.*, J.A., at A000455 (Testimony of T. Barriball), at 116:8-12 (stating that "it's impossible to speculate" what the Insurers would have offered to settle the case).

[49] J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶ 51 & n.98.

[50] J.A., at A000318-362 (Deposition of Timothy Brady), at 123:18-23 (Mr. Brady testifying that Hartford has no information regarding what amount the Thorntons would have accepted to settle the case).

[51] *E.g.*, J.A., at A003432-53 (Insurers' SOMF), at ¶ 102.

[52] J.A., at A002914-88 (O'Neill Deposition), at 44:2-8 ("Q. Would you agree with me that nowhere in either of your two reports do you identify a single specific example of an asbestos case in which Resolute or Hartford was involved and in which they actually did the things that you assert they would have done in this case? A. That's correct. I do not.").

what actions the Insurers actually took in other asbestos cases showed that Hartford, in fact, did not provide any strategic or settlement-focused input or assistance.

Years before the Thornton Action, GEA Mechanical had been named as a defendant in two other asbestos bodily injury cases, *Johnson* and *Mazzaia*, which were both tendered to Hartford.[53] In both *Johnson* and *Mazzaia*, Hartford approved GEA Mechanical's retention of Miles & Stockbridge (the same counsel it retained to defend the Thornton Action) and appropriate local counsel.[54] Hartford's involvement in both of these prior cases was decidedly hands-off and limited to receiving pleadings and other basic information from GEA Mechanical and issuing coverage position letters. Hartford never provided strategic input, never shared information or insight with GEA Mechanical or otherwise "brought [its] extensive experience to bear," and never engaged in any discussions whatsoever regarding the settlement or litigation strategy of those cases.

For example, after receiving notice in the *Johnson* case, Hartford only "acknowledged receipt" of the tender in March 2009, received some information "over the next couple of months," and agreed to contribute to

---

[53] J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶ 28.

[54] *Id.* at ¶ 29; *see also, e.g.*, J.A., at A003454-76 (Insurers' Response to GEA Mechanical's SOMF), at ¶ 29 (admitting that GEA Mechanical retained Miles & Stockbridge and local counsel to defend the *Johnson* and *Mazzaia* cases and that "Hartford did not object to the retention of defense counsel selected by GEA").

the defense costs subject to a reservation of rights on July 2, 2009.[55]

Hartford then sat back for the next year and a half and provided no

strategic input regarding the defense of the *Johnson* case, which was

ultimately dismissed in April 2010.[56] Indeed, Hartford was so uninvolved

that it was not even aware the case had been dismissed until January

2011, <u>nine months</u> after the dismissal.[57] Hartford's involvement in the

*Mazzaia* case was equally hands-off and did not involve any actions that, if

taken in the Thornton Action, could have led to a better result.[58]

## VI.   **SUMMARY OF THE ARGUMENT**

The District Court erred in granting summary judgment in favor of the

Insurers on the late-notice defense and in denying GEA Mechanical's

motion for summary judgment on the same basis. GEA Mechanical

requests that this Court vacate the District Court's decision, reverse with

instructions to enter summary judgment in favor of GEA Mechanical on the

---

[55] J.A., at A003432-53 (Insurers' SOMF), at ¶¶ 22-29 (showing Hartford's limited involvement in *Johnson* and complete lack of strategic input); J.A., at A000318-362 (Deposition of Timothy Brady), at 160:11-17 (discussing Hartford's lack of involvement in the *Johnson* case).

[56] J.A., at A003635-38 (Email chain between Hartford and GEA Mechanical), at A003636-37 (GEA Mechanical informing Hartford that the *Johnson* case had been dismissed in April 2010).

[57] *Id.*

[58] J.A., at A003432-53 (Insurers' SOMF), at ¶¶ 30-38 (showing Hartford's limited involvement in *Mazzaia* and complete lack of strategic input); *see also* J.A., at A000363-67 (Email chain between Hartford and GEA Mechanical), at A000364-66 (same).

late-notice issue, and remand with instructions for further proceedings to resolve the other issues that the District Court did not reach.

The District Court made two significant legal errors, both of which arise from the District Court's misapplication of New Jersey law regarding what an insurer is required to show to successfully maintain a late-notice affirmative defense. *See* Sections VII.A-VII.B, *infra*.

Under long-standing New Jersey law, an insurer cannot succeed on a late-notice coverage defense without demonstrating "both a breach of the notice provision and a likelihood of appreciable prejudice." *Cooper v. Gov't Emps. Ins. Co.*, 237 A.2d 870, 874 (N.J. 1968). Insurers bear the burden with respect to both elements. *Id.* ("The burden of persuasion is the carrier's."). The District Court misapplied both elements.

## A.    Breach of the Excess Policies' Notice Provisions

The District Court erred by finding a breach of the notice provisions of the Excess Policies even though: (1) the Excess Policies contain materially different notice requirements (from the Primary Policies) that require notice only if and when a claim is "reasonably likely" to implicate those Excess Policies; (2) the Parties' allocation stipulation establishes that the Excess Policies would not be implicated, at the earliest, until the point where the underlying liability was "reasonably likely" to exceed $7.3 million; and (3) the Excess Insurers made no attempt to establish the point in time (if ever) prior to the unexpected runaway verdict that the $7.3 million threshold was reached.

Nevertheless, the District Court inexplicably concluded that it was "clear" that all of the Excess Policies were "reasonably likely" to be implicated based on a course of settlement negotiations that never exceeded a demand of $1.5 million. The District Court provided no explanation of how or why a $1.5 million settlement demand makes a $7.3 million liability "reasonably likely." In any event, the only way for the District Court to have reached its conclusion would be by improperly weighing the evidence and/or making factual inferences against the non-moving party, both of which are improper at the summary judgment stage.

## B.    <u>Appreciable Prejudice</u>

Regarding the second element of the Insurers' late-notice affirmative defense – a "likelihood of appreciable prejudice" – the District Court recognized that an "insurer must prove: (1) 'substantial rights have been irretrievably lost' by virtue of the insured's failure to notify the carrier in a timely fashion **and** (2) the insurer would have had a '[] likelihood of success … defending against the accident victim's claim' had there been no breach." J.A., at A000022-38 (District Court's Opinion), at A000035 (emphasis added) (citations omitted).

The District Court went on to erroneously conclude that the Insurers could, as a matter of law, demonstrate appreciable prejudice based solely on the fact that notice was provided after a jury verdict and the Insurers' loss of the opportunity to participate in the defense of the underlying claim. *Id.* at A000037-38. This conclusion is inconsistent with well-settled New

Jersey law. Numerous decisions by courts applying New Jersey law have declined to find appreciable prejudice under similar (or later) notice facts.

Most importantly, the District Court ignored a binding Third Circuit decision, *Chemical Leaman*, in which the Third Circuit granted summary judgment to the policyholder on the late-notice defense even though notice was provided several <u>years</u> <u>after</u> the insured had <u>fully</u> <u>resolved</u> underlying environmental liability claims through a consent decree.[59] *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976 (3d Cir. 1996) (applying New Jersey law). GEA Mechanical identified *Chemical Leaman*, and a half a dozen other such cases, in its briefing. *E.g.*, J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at A003992-96, A004003-04. Despite this, the District Court inexplicably concluded that it was "not aware" of any such cases. J.A., at A000022-38 (District Court's Opinion), at A000036.

The District Court further erred by finding appreciable prejudice solely based on the Insurers' lost "opportunity to participate in the defense of the Thornton Action." J.A., at A000022-38 (District Court's Opinion), at A000037. But lost "opportunities" to participate in the defense of an underlying case, without more, are insufficient to establish appreciable prejudice under New Jersey law. *E.g.*, *KnightBrook Ins. Co. v. Tandazo-*

---

[59] A consent decree is a final resolution of a claim that "is not strictly a judgment, but rather a settlement agreement approved by the court." *Consent Decree*, CORNELL LAW SCHOOL LEGAL INFORMATION INSTITUTE, https://www.law.cornell.edu/wex/consent_decree (last visited Dec. 9, 2023).

*Calopina*, 275 A.3d 474, 479 (N.J. Super. Ct. App. Div. 2022) (reversing a trial court that found appreciable prejudice based solely on lost "rights to explore defenses, to call witnesses, … to determine what strategy, [and] how they would proceed in the lawsuit"); *Morales v. National Grange Mut. Ins. Co.*, 423 A.2d 325, 329-30 (N.J. Super. Ct. Law Div. 1980) (declining to find appreciable prejudice as a matter of law when the insurer had lost the opportunity to "make a prompt investigation of the accident" or participate in the litigation). The rationale for this rule is obvious. Any time that notice is late, opportunities to participate pre-notice are necessarily lost. Thus, if lost opportunities were alone sufficient, the appreciable prejudice requirement would be converted into a prejudice-*per-se* rule.

Because the District Court improperly granted the Insurers' motion for summary judgment based solely on the late-notice issues, which was the primary focus of the Parties' summary judgment briefing, the District Court did not decide whether GEA Mechanical had established its *prima facie* case for coverage nor did it address the Insurers' other affirmative defenses and counterclaims. J.A., at A000022-38 (District Court's Opinion), at A000038 n.9. GEA Mechanical asks that this Court reverse the District Court's decision on the late-notice issue and remand the case for further proceedings with respect to the other issues.

## VII.    <u>ARGUMENT</u>

GEA Mechanical raises two questions on appeal. For both, the District Court erred by denying GEA Mechanical's summary judgment

motion or, at the very least, by granting summary judgment to the Insurers. Accordingly, the Court should review this appeal *de novo*.

The first question is whether the District Court erred in finding a breach of the notice provision of the Excess Policies. The Excess Insurers did not set forth any, let alone sufficient, undisputed facts establishing if, or when, their Policies were likely implicated by the Thornton Action, yet the District Court granted summary judgment to the Excess Insurers on this issue.

The second question is whether the District Court erred in applying the second element of the late-notice affirmative defense. The Insurers bear the burden of establishing that they suffered appreciable prejudice with respect to all of the Policies. The District Court made two significant, related errors in applying this element of New Jersey's appreciable prejudice law: (1) it improperly held, without addressing a wealth of contrary precedent, that appreciable prejudice exists <u>as a matter of law</u> whenever notice is provided after the entry of a judgment; and (2) it found appreciable prejudice solely by virtue of the loss of claims-handling rights (i.e., the right to participate in the defense of the Thornton Action).

This Court should reverse the District Court's order with respect to the late-notice affirmative defense and should remand this case with instructions to resolve the other issues that the District Court did not reach.

A.    **Argument No. 1: The District Court Erred in Concluding Notice Was Late As to the Excess Policies**

Under New Jersey law, in addition to showing appreciable prejudice as discussed in Section VII.B, below, an insurer asserting a late-notice affirmative defense bears the burden of showing that there was "a breach of the notice provision[.]" *See* J.A., at A000022-38 (District Court's Opinion), at A000030 (citing *Cooper*). Of course, whether or not a policyholder breached a notice provision depends on the terms of the applicable notice provision. Moreover, "[a] notice provision is not breached where an insured acts reasonably and in good faith." *N.J. Dep't of Env't Prot. v. DiFlorio*, No. L-2070-02, 2007 WL 4553046, *6 (N.J. Super. Ct. App. Div. Dec. 28, 2007) (unpublished) (citing *Cooper*).

Because excess policies, by their nature, are not implicated unless a liability exceeds the limits of underlying policies, excess policies typically (as is the case here) contain different notice requirements than primary policies. The Excess Policies in this case require notice of claims that are "reasonably likely" to involve the Excess Policy.[60] As multiple courts have recognized, a notice provision's use of the term "likely" imposes a higher threshold and requires a higher level of certainty than the term "may." *Hatco Corp. v. W.R. Grace & Co.*, 801 F. Supp. 1334, 1370–71 (D.N.J. 1992) (applying New Jersey law); *see also CSR Ltd. v. Cigna Corp.*, No. 95-2947 (HAA), 2006 WL

---

[60] *See, e.g.*, J.A., at A000022-38 (District Court's Opinion), at A000033; J.A., at A000089-120 (GEA Mechanical's SOMF), at ¶¶ 31(b)-31(d) (setting forth the Excess Policies' notice provisions).

436113, *17, 20 n.13 (D.N.J. Feb. 22, 2006) (unpublished) (explaining that "the phrase 'likely to involve this policy' in the notice provision establishes a higher burden of proof for a defendant insurer").

Under the Excess Policies' "reasonably likely" language, GEA Mechanical is not required to provide notice of every claim but rather only those claims that are (or become) "likely" to reach the Excess Policy. Whether (or when) a claim is "likely" to reach a certain policy might change as facts and legal issues are developed in the underlying action. Indeed, the District Court correctly acknowledged that, "[w]hether GEA Mechanical's notice to the excess carriers was timely depends on what point in the litigation it became 'reasonably likely' that the Excess Policies would be implicated." J.A., at A000022-38 (District Court's Opinion), at A000033. Because the Insurers bear the burden of proof on their late-notice affirmative defense, they need to make a factual showing regarding the point in time when the underlying claim was or became reasonably likely to implicate each Excess Policy.

Under New Jersey law, insurance coverage for an asbestos claim involving an alleged injury over many years, such as the Thornton Action, is allocated to each triggered policy period based on the total policy limits in each triggered policy period. *See generally Carter-Wallace, Inc. v. Admiral Ins. Co.*, 712 A.2d 1116 (N.J. 1998). This allocation issue is undisputed and the Parties stipulated to the applicable allocation methodology. J.A., at A000130-138 (Allocation Stipulation); *see also* J.A., at A000089-120 (GEA

Mechanical's SOMF), at A000120 (Appendix 1, showing the application of *Carter-Wallace* allocation percentages by period for Thornton Action to the Policies). Under the stipulated allocation, because only a portion of GEA Mechanical's total liability is assigned to each triggered policy period, the Thornton Action liability would have to exceed roughly $7.3 million before the amount assigned to any relevant policy period would exceed the $1 million attachment point of the lowest-attaching Excess Policy. J.A., at A000022-38 (District Court's Opinion), at A000033 n.7.[61]

---

[61] Notably, while $7.3 million is required to implicate the first-attaching Excess Policy, many of the other Excess Policies require far greater liability to be implicated and, in many cases, more liability than was ultimately incurred by GEA Mechanical. Indeed, several non-Party insurers were voluntarily dismissed from this Litigation because the liability for the Thornton settlement did not reach their excess policies. *See* ECF 24 (discussing the dismissal of Federal Insurance Company and Travelers Casualty and Surety Company).

The District Court made no distinctions whatsoever regarding the different attachment points of the different Excess Policies and instead simply concluded, as a matter of law, that the "reasonably likely" standard was "unquestionably" met as to all Excess Policies including certain Excess Policies that were indisputably never implicated by the Thornton Action. For example, First State Policy No. 932288 would not have been reached even by the $70.1 million verdict that the Insurers called "record-breaking," J.A., at A004079-103 (Insurers' Reply Brief), at A004084, let alone the far-lower amount of the final settlement. *Compare* J.A., at A000089-120 (GEA Mechanical's SOMF), at Appendix 1 (showing that the Thornton settlement would only implicate certain Policies, which does not include First State Policy No. 932288), *with* J.A., at A000650-659 (Hartford Policy Stipulation), at A000653 & Ex. 21 (detailing Policy No. 932288, which covers the period from 10/25/1981-10/25/1982).

Yet, the District Court held it was "clear" that all of the Excess Policies were "reasonably likely" to be implicated, despite the fact that several Excess Policies like Policy No. 932288 were, in fact, never implicated. The District Court's conclusion failed to make all inferences in favor of the non-moving party.

After seemingly acknowledging this threshold requirement, the District Court improperly, and without explanation, made factual inferences against GEA Mechanical and held (in a conclusory fashion) that the "undisputed facts of this case clearly support the Defendants' position that the Excess Policies were 'reasonably likely' to be implicated[.]" *Id.* at A000033. The District Court, like the Excess Insurers, provided no analysis of the point in time at which the Thornton Action (prior to the unexpected runaway verdict) became "reasonably likely" to exceed $7.3 million. Instead, the District Court pointed generally to the Thorntons' pre-trial demand of $1.5 million (which itself was not large enough to trigger any of the Excess Policies), coupled with lower settlement offers made by GEA Mechanical, and "other relevant and undisputed facts of this case," (such as "the nature of the injury, the failed pre-trial settlement negotiations, and an upcoming trial") to conclude that it was "clear … that GEA Mechanical breached the notice obligations[.]" *Id.* at A000033-34.[62] The District Court engaged in improper fact finding.

Significantly, the Excess Insurers never set forth their own valuations of the Thornton Action and made no effort to establish when, if ever, GEA Mechanical's liability for the Thornton Action would have been "likely" to exceed $7.3 million, prior to the unexpected runaway verdict. Indeed, the

---

[62] The specific amounts of GEA Mechanical's settlement offers, which are confidential, are set forth in Volume 2 of the Joint Appendix, at A000052-53. Relevant to this appeal, none of the pre-trial demands or offers exceeded the Thorntons' $1.5 million demand and were all significantly lower than the $7.3 million that would be needed to trigger even the lowest attachment point for any of the Excess Policies.

only factual evidence in the summary judgment record regarding the valuation of the pre-trial Thornton claim was the Insurers' own expert, who opined that the Thorntons' initial (and only) pre-trial demand of $1.5 million was "high" for this type of claim,[63] and the Insurers' own corporate witnesses, none of which was willing to testify that the Insurers would have paid $1.5 million to settle the claim.[64] Importantly, the Thorntons' $1.5 million settlement demand would not have triggered any of the Excess Policies. *See* J.A., at A000130-138 (Allocation Stipulation) (illustrating that no policy period would have been allocated more than 13.68% of the $1.5 million demand, or roughly $205,000).

The District Court acknowledged that, in "considering a motion for summary judgment, a district court may not … engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" J.A., at A000022-38 (District Court's Opinion), at A000026 (citation omitted). Nor can summary judgment be granted "if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed" and summary judgment "is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact." *Id.* (citations omitted); *see also CSR*, 2006 WL 436113 at *18 (holding the

---

[63] J.A., at A000208-220 (Report of Elizabeth O'Neill), at A000215.

[64] J.A., at A000045-88 (GEA Mechanical's Opening Brief), at A000069 (discussing the testimony of the Insurers' corporate witnesses Mr. Brady and Mr. Barriball).

"Reasonableness of Plaintiffs' Notice Must Be Decided by the Finder of Fact").

Based on the lack of evidence supporting the Excess Insurers' position, the District Court should have granted summary judgment to GEA Mechanical with respect to the Excess Insurers' late-notice defense. At best, there is a genuine dispute of material fact on this issue. This Court should vacate the District Court's grant of summary judgment on this issue and either reverse or remand with instructions for further proceedings.

**B.    Argument No. 2: The District Court Erred in Applying New Jersey's Appreciable Prejudice Standard in Two Significant, Related Ways**

The District Court also erred in applying the second element of New Jersey late-notice law, which places the burden on insurers to show a likelihood of appreciable prejudice. To establish "appreciable prejudice," an insurer must prove that: (1) it "irretrievably lost" "substantial rights" by virtue of the late notice; and (2) the insurer had a "likelihood that it would have had a meritorious defense" and would have achieved a better result in the underlying liability claim. *Sagendorf v. Selective Ins. Co. of Am.*, 679 A.2d 709, 715-16 (N.J. Super. Ct. App. Div. 1996); J.A., at A000022-38 (District Court's Opinion), at A000035. As with the first element, "[t]he insurer seeking to avoid coverage has the burden of demonstrating prejudice for late notice." *British Ins. Co. of Cayman v. Safety Nat. Cas.*, 335 F.3d 205, 212 (3d Cir. 2003) (applying New Jersey law) (citing *Cooper*). Moreover, "[t]he question of whether appreciable prejudice exists is a factual question

unique to each case." *Contl. Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1048 (D.N.J. 1993) (applying New Jersey law).

Importantly, an insurer must provide "concrete evidence" to prove "actual," rather than "speculative," appreciable prejudice. *E.g., Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.*, 88 F. Supp. 2d 360, 368 (D.N.J. 2000) (applying New Jersey law); J.A., at A000022-38 (District Court's Opinion), at A000035; *Allstate Ins. Co. v. Grillon*, 251 A.2d 777, 781 (N.J. Super. Ct. App. Div. 1969) (rejecting insurer's appreciable prejudice assertion resting "on mere speculation and surmise, and not upon proof which [insurer] had the burden of establishing"). "[M]ere conjecture or suspicions may not form the basis for establishing appreciable prejudice." *Transportes Ferreos*, 239 F.3d at 561 (3d Cir. 2001). Nor can an insurer establish appreciable prejudice simply by showing "the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim[.]" *Id.*

The District Court misapplied the appreciable prejudice standard in two separate, albeit related, ways, discussed below.

### 1. First, the District Court Ignored Binding Precedent and Erroneously Held that Appreciable Prejudice Exists as a Matter of Law when Notice Is Provided After a Judgment, Verdict, or Settlement

The District Court's ruling was based on the erroneous view that appreciable prejudice exists as a matter of law when notice is provided after a judgment, verdict, or settlement. J.A., at A000022-38 (District Court's Opinion), at A000036-37. The District Court stated:

> There is a significant difference between cases where notice was simply delayed and cases where notice was delayed until after a case was tried or settled. …This Court is <u>not aware of any New Jersey decision refusing to find appreciable prejudice where notice was provided after the entry of a verdict, judgment or settlement</u>.

*Id.* (emphasis added) (quotations omitted). To the contrary, however, there is a wealth of New Jersey decisions refusing to find appreciable prejudice where notice was provided after the entry of a verdict, judgment or settlement.

Foremost is *Chemical Leaman*. In *Chemical Leaman*, the Third Circuit held that a policyholder that provided notice to its insurer <u>four years after</u> entering into a consent decree for environmental liability, which required the expenditure of millions of dollars in remediation costs, was nevertheless entitled to coverage because the insurer was required, but failed, to establish appreciable prejudice. *Chemical Leaman*, 89 F.3d at 996–97. Not only did this Court not find appreciable prejudice as a matter of law under those facts, it affirmed a grant of summary judgment to the policyholder and against the insurer on the late-notice defense. *Id.* GEA Mechanical cited *Chemical Leaman* multiple times in its briefing, *e.g.*, J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at A003990, 93-94, but the District Court made no mention of the decision.

*Chemical Leaman* is not the only New Jersey case in which courts required a factual showing of appreciable prejudice even though notice was provided after underlying claims were fully resolved. In fact, the vast majority of New Jersey late-notice decisions involving this fact pattern

Case: 23-2062    Document: 22    Page: 35    Date Filed: 12/15/2023

nonetheless require the insurer to show appreciable prejudice. For

example:

- In *N.J. Dep't of Env't Prot. v. DiFlorio*, No. L-2070-02, 2007 WL 4553046 (N.J. Super. Ct. App. Div. Dec. 28, 2007), the New Jersey Appellate Division reversed a trial court's holding that an insurer had shown appreciable prejudice and instead held that the fact that the policyholder did not provide notice until "more than two months after it agreed to [a] settlement" was insufficient to establish appreciable prejudice. *Id.* at *2.

- In *Solvents Recovery Serv. of New England v. Midland Ins. Co.*, 526 A.2d 1112, 1114-15 (N.J. Super. App. Div. 1987), notice was provided more than <u>two years</u> <u>after</u> the insured entered a consent decree. The Appellate Division reversed the trial court's ruling in favor of the insurer on appreciable prejudice and remanded for factual determinations.

- In *Jackson v. N.J. Indem. Ins. Co.*, No. L–0497–08, 2011 WL 2848586 (N.J. Super. Ct. App. Div. July 20, 2011) (unpublished), the New Jersey Appellate Division again reversed a trial court's grant of summary judgment and held that an insurer failed to show appreciable prejudice even though notice was provided <u>after</u> a default judgment.

- In *Nat'l Union Fire Ins. Co. v. Becton, Dickinson & Co.*, No. 2:14-cv-04318-EP-JSA, Doc. 315, at 3-4, 18-19 (D.N.J. July 12, 2022) (unpublished), the District Court denied an insurer's motion for summary judgment and held it had failed to establish appreciable prejudice as a matter of law even though the policyholder had provided notice of three separate underlying claims between <u>four to ten years</u> <u>after</u> the policyholder had already settled those claims (for amounts totaling $167 million).

- In *Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*, No. 14-4410, Doc. 63 (D.N.J. July 12, 2016) (unpublished), which arose from the same facts as the *National Union* case, above, the District Court denied the insurers' motion for judgment on the pleadings and for reconsideration and rejected the insurers' argument that "the appreciable prejudice standard does not automatically apply to 'occurrence-based' policies" even when the policyholder "settled several lawsuits and belatedly (by <u>years</u>) tendered the lawsuit to [the insurers] for coverage" <u>after</u> settling the claims. *Id.* at 1, 6 (emphasis added).

- In *Morales*, 423 A.2d 325, a New Jersey trial court denied cross-motions for summary judgment and held that the insurer must prove appreciable prejudice as a factual matter even though the insurer "had no notice of the underlying negligence action" until <u>after</u> a default judgment had been entered against the policyholder. *Id.* at 326, 330.

Every one of these decisions is inconsistent with the District Court's holding that, where notice was provided "after settlement negotiations, trial, and a jury verdict of $70.1 million[,]" "[t]here is no reasonable dispute" that the Insurers were appreciably prejudiced as a matter of law because they were "deprived completely of any opportunity to participate in the defense of the Thornton Action until after a verdict and judgment was entered." J.A., at A000022-38 (District Court's Opinion), at A000037. GEA Mechanical's summary judgment briefing identified all of these cases for the District Court. *E.g.*, J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at A003992-96, A004003-04 (discussing *Morales*, *Chemical Leaman*, *Solvents Recovery*, *DiFlorio*, *Jackson*, and *Becton Dickson*). Yet, other than *Morales*, which is discussed below, the District Court inexplicably failed to address any of these cases.

The District Court also drew an erroneous distinction from "instances where the Court declined to find appreciable prejudice when notice was provided after default judgments[.]" J.A., at A000022-38 (District Court's Opinion), at A000036 n.8. Such a distinction makes little sense, and the District Court got it precisely backwards, because a default judgment ordinarily means an underlying case was <u>not</u> defended even by the policyholder. In that situation, it should thus be <u>easier</u> for an insurer to

32

establish that, had it been given notice earlier, it could have done something differently to achieve a better outcome. Notice provided after a default judgment is <u>more</u> likely, not less likely, to cause an insurer to suffer appreciable prejudice than when the policyholder engaged competent counsel and vigorously defended the case, as happened here. The fact that courts applying New Jersey law have found absence of appreciable prejudice even in default judgment cases supports GEA Mechanical's position that appreciable prejudice cannot be imputed here as a matter of law.

In contrast to a default judgment, GEA Mechanical defended the Thornton Action and retained the same law firm that Hartford had approved to defend GEA Mechanical in two prior asbestos cases.[65] In addition, the Insurers were on notice of the Thornton Action <u>before</u> it was settled, while the judgment was still appealable, while post-trial motions were pending, and while post-trial settlement discussions were ongoing.[66] In fact, most of the Insurers had already denied coverage <u>before</u> GEA Mechanical settled the Thornton Action.[67] GEA Mechanical's Insurers, unlike those in *Chemical Leaman*, and unlike those in a default judgment scenario, were given an opportunity to participate in pre-resolution defense efforts, and

---

[65] *See* J.A., at A000045-88 (GEA Mechanical's Opening Brief), at A000054 (explaining that Harford had consented to GEA Mechanical's defense counsel in two prior asbestos cases).

[66] *Id.* at A000055-56.

[67] *Id.* at A000056.

could have done so under a reservation of rights, but they declined that opportunity.[68]

There can be no dispute that the insurers in *Chemical Leaman*, for example, had <u>less</u> of an opportunity to defend or settle. Moreover, and in any event, the inability to participate in the defense of an underlying claim is not sufficient, by itself, to establish appreciable prejudice as a matter of New Jersey law, because, otherwise, the Third Circuit in *Chemical Leaman* (and the numerous other courts in the cases discussed above) would have reached a very different conclusion.

Moreover, even if cases involving notice after a default judgment were distinguishable, only two of the many cases GEA Mechanical cited for this particular point, *Morales* and *Jackson*, involved notice after a default judgment. The District Court's holding, finding appreciable prejudice where notice was provided <u>before</u> the settlement of the Thornton Action, is contrary to the holdings of the remaining cases, including *Chemical Leaman*, where the policyholders provided notice to their insurers months or years <u>after</u> settlements. Courts should apply the law consistently when confronted with the same facts. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("The law of precedent teaches that like cases should generally be treated alike[.]").

---

[68] J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at Section II.A.1.i (explaining that the Thornton Action was not fully resolved at the time of notice).

Finally, the District Court's rejection of cases involving default judgments is inconsistent with the fact that most of cases the District Court relied on involving notice <u>after</u> the underlying claim was fully resolved, were cases involving default judgments. *E.g.*, *Martin v. Fireman's Fund Ins. Co.*, No. A-4206-09T1, 2011 WL 1584333, *2 (N.J. Super. Ct. App. Div. Apr. 28, 2011) (a non-precedential decision involving notice to an auto insurer <u>after</u> a default judgment); *Morales*, 423 A.2d at 326-27 (explaining the insurer was not notified of the underlying case until <u>after</u> the entry of a default judgment).

Indeed, a thorough review of the *Morales* decision, which appellate courts in New Jersey have consistently relied upon, shows that the District Court appears to have misread the holding and misconstrued the important difference between "prejudice" and "appreciable prejudice." In *Morales*, a New Jersey trial court faced with a late-notice defense involving an insurer that was not aware of the underlying lawsuit until <u>after</u> a default judgment, nonetheless <u>refused</u> to find appreciable prejudice as a matter of law and instead denied the insurer's motion for summary judgment on that issue. *Morales*, 423 A.2d at 330 ("[A] plenary hearing is necessary to resolve the factual issues bearing upon defendant's claim of appreciable prejudice.").

The District Court quoted *Morales* for the proposition that "[w]here 'notice has been given after the entry of judgment, it cannot reasonably be argued that the carrier has not been prejudiced.'" J.A., at A000022-38 (District Court's Opinion), at A000037 (quoting *Morales*). But, as GEA

Mechanical explained in its summary judgment briefing, *see* J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at A003992-93 & n.6, the *Morales* court went on to immediately explain that "[t]he extent to which such rights have been irretrievably destroyed, however, <u>is quite another question</u>" and that "[u]nder such circumstances, <u>it would be unfair to apply a per se rule barring recovery</u>[.]" *Morales*, 423 A.2d at 330 (emphases added). Moreover, as discussed above, the court ultimately held the insurer must show *appreciable* prejudice even though the insurer had unquestionably lost the "opportunity to make a prompt investigation of the accident, to depose parties and others, to appear at trial and cross-examine witnesses, and to present evidence in its insured's behalf." *Id.* at 329-30. The court in *Morales* refused to grant summary judgment to an insurer for precisely the same "lost opportunities" that the District Court here found to be sufficient to establish appreciable prejudice as a matter of law.

### 2. Second, the District Court Erroneously Concluded that an Insurer Can Meet Its Appreciable Prejudice Burden Simply By Establishing that it Lost an Opportunity to Participate in the Underlying Defense

The District Court also misapplied the appreciable prejudice standard by finding that a lost opportunity to engage in certain claims-handling actions is appreciable prejudice as a matter of law. Specifically, the District Court held that the Insurers "were deprived completely of any opportunity to participate in the defense of the Thornton Action until after a verdict and

judgment was entered." J.A., at A000022-38 (District Court's Opinion), at A000037.

The District Court acknowledged that under New Jersey law there is a two-pronged test to establish "appreciable prejudice" and an "insurer must prove: (1) 'substantial rights have been irretrievably lost' by virtue of the insured's failure to notify the carrier in a timely fashion and (2) the insurer would have had a 'the [*sic*] likelihood of success … defending against the accident victim's claim' had there been no breach." *Id.* at A000035. The District Court made no findings with regard to the second prong and instead focused its analysis entirely on the first, which it held was satisfied solely by a lost opportunity to "participate in the defense of the Thornton Action." *Id.* at A000037. This was clear error.

Under New Jersey law, the first prong relates <u>only</u> to lost "rights <u>related to coverage determinations by an insurer</u>." *KnightBrook*, 275 A.3d 474, 480 (emphasis added). Stated otherwise, to establish the first prong, an insurer must show the loss of coverage rights (i.e., rights that relate to the insurers' ability to determine or contest its coverage obligations). In contrast, the loss of claims-handling rights (i.e., opportunities to investigate the underlying claim or participate in the defense) are analyzed under the second prong, where the insurer must demonstrate what it would have done to achieve a superior result. The District Court seemingly acknowledged the difference between the first and second prongs by observing that, "[u]nder the first variable, an insurer must demonstrate

'irretrievable loss of substantial rights <u>related to coverage determinations by an insurer</u>.'" J.A., at A000022-38 (District Court's Opinion), at A000035 (quoting *Knightbrook*) (emphasis added). The District Court, however, then went on to inexplicably and erroneously misapply New Jersey law, including the 2022 Appellate Division decision in *Knightbrook*, by holding that a lost opportunity to participate in the defense of the Thornton Action satisfies the first prong. The District Court thus improperly conflated two very different types of appreciable prejudice.

Clearly, the <u>only</u> lost right that the District Court specifically identified was the Insurers' supposedly being "deprived completely of any opportunity to participate in the defense of the Thornton Action" and thus being "irreversibly deprived of any meaningful participation in this case." *Id.* at A000037. This is unquestionably a claims-handling right, and <u>not</u> a "coverage determination" right, which cannot, by itself, establish appreciable prejudice. *See Knightbrook*, 275 A.3d at 480.

In fact, in *Knightbrook*, the Appellate Division <u>reversed</u> a trial court that, much like the District Court, found appreciable prejudice based solely on a series of lost claim handling rights of this precise nature, including the "rights to explore defenses, to call witnesses, … to determine what strategy, [and] how they would proceed in the lawsuit[.]" *Id.* at 479. The court held that such rights did <u>not</u> relate to the insurer's coverage determination and that, because "there [were] no issues concerning [the insurer's] ability to determine coverage[,]" the insurer had failed to establish

the first prong of appreciable prejudice, even though it had undeniably lost rights to participate in the underlying defense. *Id.* at 481-82.

Similarly, in another case decided in 2022, *National Union v. Becton, Dickinson*, the District Court denied an insurer's motion for summary judgment on late notice even though the policyholder did not provide notice of three settlements (totaling $167 million) of different lawsuits until <u>years after</u> executing the settlements. *Nat'l Union Fire Ins. Co. v. Becton, Dickinson & Co.*, No. 2:14-cv-04318-EP-JSA, Doc. 315, at 2-5 (D.N.J. July 12, 2022) (applying New Jersey law) (discussing the notice in 2014 of three settlements that were entered into in 2004, 2009, and 2013). Just like GEA Mechanical's Insurers, the insurer in that case claimed it had met the first prong because:

> [I]t irretrievably lost substantial rights because, *inter alia*, it was unable to perform a contemporaneous investigation while the Underlying Actions were litigated, it could not ensure that all insurers were notified of the Underlying Actions and pursued, <u>it could not oversee counsel retained to defend the Underlying Actions, and it did not participate in settlement discussions</u>.

*Id.* at 18 (emphasis added). These are the same purported lost opportunities that the Insurers assert in this Litigation and yet the District Court reached the opposite conclusion in that case and held that such lost rights were insufficient to establish the first element of appreciable prejudice as a matter of law because the insurer "must do more than 'establish … the mere fact that it cannot employ its normal procedures in

investigating and evaluating the claim,' and 'mere conjecture or suspicions' will not suffice." *Id.* (quoting *Transportes*, 239 F.3d at 561 (3d Cir. 2001)).

The above difference between the two prongs of appreciable prejudice is consistent with, and informed by, the fundamental policy underlying New Jersey's appreciable prejudice law, which is, *inter alia*, to avoid the harshness of a complete forfeiture of coverage unless the timing of the notice was likely to have caused the insurer to incur a greater obligation than if it had been given notice earlier. *See Cooper*, 237 A.2d at 873-74 ("[I]t becomes unreasonable to read the [notice] provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach.").

Thus, the defense of the underlying case and an insurer's defense against coverage are distinct issues for late notice purposes. As the trial court in *Chemical Leaman* explained, the two appreciable prejudice prongs each relate to one of these separate purposes: to allow an insurer to investigate the merits of "the insured's claim against the carrier[,]" on one hand; and "the underlying claim against the insured[,]" on the other. *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 817 F. Supp. 1136, 1158 (D.N.J. 1993), *aff'd in part and remanded on other grounds,* 89 F.3d 976 (3d Cir. 1996). A loss of the opportunity to participate in the defense speaks only to the second prong of the appreciable prejudice analysis, which is whether the insurer, if it were involved earlier, would have had a likelihood of obtaining a better result in defending the underlying claim.

Thus, as many courts have recognized, an insurer cannot show appreciable prejudice under the second prong merely by pointing out lost claims-handling rights, such as the loss of an opportunity to control or participate in an underlying defense, without also showing how that lost opportunity likely resulted in a worse outcome.

As the court in *Knightbrook* explained, the first, loss-of-rights prong must be limited to rights regarding the insurer's ability to determine or contest its coverage obligations because "[t]o conclude otherwise would render the second variable under the appreciable prejudice prong redundant." *Knightbrook*, 275 A.3d at 480-81. Stated otherwise, if the loss of a mere opportunity to participate in the defense was sufficient to establish appreciable prejudice as a matter of law, appreciable prejudice would automatically exist whenever notice was late, as an insurer always loses some opportunity to participate in the defense. This would convert the appreciable prejudice requirement established by the New Jersey Supreme Court into a prejudice-*per-se* standard.

New Jersey law, however, rejects a prejudice-*per-se* rule and instead places a high burden on insurers to prove that the notice timing ultimately caused the insurer actual harm. *E.g.*, *Esurance Ins. Co. of New Jersey v. Laplante*, No. SOM-L-001506-17, 2019 WL 13443463, at *40 (N.J. Super. Ct. Law Div. 2019) ("In general, it is difficult for an insurer to demonstrate the necessary prejudice, even in the face of a default judgment against the insured."); *see also Morales*, 423 A.2d at 330 ("[I]t would be unfair to apply

a per se rule barring recovery against the carrier[.]"); *Solvents Recovery*, 526 A.2d at 1115 ("We cannot agree with [insurer's] per se contention that prejudice is inescapable[.]"). As the Third Circuit has previously explained when rejecting another of Hartford's arguments for a prejudice-*per-se* rule, "New Jersey law is not so generous[.]" *Transportes*, 239 F.3d at 561 (vacating a District Court's holding and rejecting Hartford's contention that "the loss of a piece of evidence will per se establish substantial prejudice").

Moreover, as discussed at length in Section VII.B.1, above, courts applying New Jersey law (including the binding precedent from the Third Circuit in *Chemical Leaman*) have routinely required insurers to show appreciable prejudice even in situations where the insurers inarguably had no ability at all to participate in the underlying defense because they received notice only after the underlying claim was fully resolved. This too makes it clear that the District Court's finding of appreciable prejudice, based solely on the lost opportunity to participate in the defense of the Thornton Action, was inconsistent with New Jersey law.

Here, the District Court did not find that the Insurers lost any rights relating to their ability to make a coverage determination (indeed, the Insurers did not argue that they lost any such rights and the Parties agree that the Policies generally cover liability for asbestos bodily injury claims such as the Thornton Action) nor did it determine that the Insurers had met the second prong by showing a likelihood of achieving a better result in the defense of the Thornton Action. *See generally* J.A., at A000022-38 (District

Court's Opinion). Thus, the District Court's decision simply misapplies New Jersey law and should be reversed.

### C. GEA Mechanical Is Entitled to Summary Judgment on the Insurers' Late-Notice Affirmative Defense

As set forth at length in GEA Mechanical's summary judgment briefs, the Insurers failed to meet their burden to set forth any "concrete evidence" to establish appreciable prejudice. *See* J.A., at A000045-88 (GEA Mechanical's Opening Brief), at Section III.C.2; *see also* J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at Section II.B. Rather than set forth facts to establish appreciable prejudice, the Insurers' summary judgment briefing primarily argued that a showing of appreciable prejudice was not required and/or was established as a matter of law. *E.g.*, J.A., at A003364-431 (Insurers' Opening Brief), at A003394-407; J.A., at A004079-103 (Insurers' Reply Brief), at A004088-99.

However, when the Insurers finally did address their factual appreciable prejudice burden, they failed to identify any disputed material facts that could support their arguments. *See generally* J.A., at A003364-431 (Insurers' Opening Brief), at A003407-12; J.A., at A004079-103 (Insurers' Reply Brief), at A004099-103. Instead, the Insurers simply reiterated their arguments that they had lost the right to participate in the underlying defense and claimed they would have responded to an early demand with a higher settlement offer than what GEA Mechanical offered "in order to achieve a pre-trial settlement." J.A., at A003364-431 (Insurers'

Opening Brief), at A003410-11; *see also* J.A., at A004079-103 (Insurers'
Reply Brief), at A004099-103.

Once again, *Chemical Leaman* is instructive because the Third
Circuit held that an insurer cannot establish appreciable prejudice merely
by speculating that it could have settled the underlying case for less.
*Chemical Leaman*, 89 F.3d 976 (affirming that an insurer's claim "that
timely notice would have resulted in a likelihood that the insurance carriers
would have reached a more favorable settlement" was insufficient to
establish appreciable prejudice). The New Jersey Supreme Court and other
New Jersey courts have concluded the same thing. *E.g.*, *Gazis v. Miller*,
874 A.2d 591, 597 (N.J. Super. Ct. App. Div. 2005) (rejecting that an
insurer's assertion that it would have "sought an early settlement" was
sufficient to establish appreciable prejudice), *aff'd,* 892 A.2d 1277, 1281
(N.J. 2006) ("We agree essentially with the reasoning set forth in the
succinct and persuasive opinion authored by Judge Coburn[.]"); *DiFlorio*,
No. L-2070-02, 2007 WL 4553046, at *7 (holding that an insurer's
allegation it "might" have negotiated a better settlement was insufficient to
establish appreciable prejudice).

This is especially true where, as discussed in Section V.B.3, *supra*,
the Insurers never contended they would have offered as much as the
highest of GEA Mechanical's pre-trial settlement offers and also testified
that they would not have been willing to settle the case for the $1.5 million

that the Thorntons demanded.[69] The record is also clear that, in prior asbestos cases against GEA Mechanical, Hartford approved the law firm that GEA Mechanical retained to defend it in the Thornton Action and took no meaningful role in defending or settling those cases.[70]

The Insurers provided no evidence suggesting a possibility of a pre-trial settlement at an amount that the Insurers were willing to pay and the Thorntons were willing to accept.[71] The Insurers' witnesses only indicated they might have paid a vague amount but provided no evidence to suggest that the Thorntons would have accepted anything significantly below their $1.5 million demand.[72]

At the same time, the Insurers do not assert, much less show, that GEA Mechanical failed to develop and present any factual, expert, or legal defenses that would have resulted in a better litigated outcome.[73] Moreover, merely casting aspersions at the defense team, untethered to any specific substantive deficiencies or to any evidence of what the Insurers would have done differently is without merit, because New Jersey law requires an insurer to establish appreciable prejudice based on what the insurer would have done and not by "probing into the minutia of the

---

[69] *E.g.*, J.A., at A000045-88 (GEA Mechanical's Opening Brief), at A000069.

[70] J.A., at A000045-88 (GEA Mechanical's Opening Brief), at A000054; J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at A004011-13.

[71] J.A., at A003982-4027 (GEA Mechanical's Reply Brief), at A004013-16.

[72] *Id.* at A004014-15.

[73] *Id.*

strategy and conduct of the policyholder's counsel[.]" *Nat'l Union Fire Ins. Co. v. Becton, Dickinson & Co.*, No. 2:14-cv-04318-EP-JSA, 2018 WL 627378, at *9-10 (D.N.J. Jan. 30, 2018) (applying New Jersey law) (unpublished).

In sum, based on the record, there is no reason to believe that, even if the Insurers were involved from the outset, the case would have proceeded any differently. This is, by definition, a lack of appreciable prejudice.

Given that the District Court erroneously concluded that appreciable prejudice exists as a matter of law and that the Insurers failed to set forth any genuine issues of material fact to meet their burden to show appreciable prejudice, GEA Mechanical was entitled to summary judgment on the late-notice issue.

### D.    This Court Should Remand the Case to Resolve the Remaining Defenses

Because the District Court denied GEA Mechanical's motion for summary judgment based solely on the late-notice issues, which was the primary focus of the Parties' summary judgment briefing, the District Court did not decide whether GEA Mechanical had established its *prima facie* case nor did it address the Insurers' other affirmative defenses and counterclaims. J.A., at A000022-38 (District Court's Opinion), at A000038, n.9. GEA Mechanical asks that this Court reverse the District Court's

decision and remand the case for further proceedings with respect to these other issues.

## VIII.    <u>CONCLUSION</u>

Appellant GEA Mechanical respectfully requests that the Court reverse the District Court's order of May 11, 2023 and remand with instructions to (1) grant GEA Mechanical's motion for summary judgment with respect to the Insurers' late-notice defense and (2) conduct further proceedings with respect to the remaining issues. In the alternative, GEA Mechanical requests this Court to vacate the District Court's order and to remand for further proceedings on all issues.

Dated: December 15, 2023                    Respectfully submitted,

**K&L GATES LLP**

/s/ *Donald W. Kiel*
Donald W. Kiel (NJ Bar # 014371982)
One Newark Center
Tenth Floor
Newark, New Jersey 07102-5252
973-848-4000
*- and -*
Joseph C. Safar (PA Bar # 78205)
Erin D. Fleury (PA Bar # 320545)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
412-355-6500

*Attorneys for Appellant,*
*GEA Mechanical Equipment US, Inc.*

47

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that all counsel representing the appellant are members of the bar of this Court.

 /s/ *Donald W. Kiel*

## ELECTRONIC-FILING CERTIFICATION

I hereby certify that the attached brief as provided to the Court in electronic form includes the same text as the "hard copies" of the brief filed with the Court. I also certify that this electronic file has been scanned with McAfee OnDemand Anti-Virus Scan.

 /s/ *Donald W. Kiel*

## CERTIFICATION OF WORD COUNT

I certify that this brief includes 12,070 words as calculated with the word-counting feature of Microsoft Word and including the parts of the brief specified in Federal Rule of Appellate Procedure 32.

 /s/ *Donald W. Kiel*

## CERTIFICATE OF SERVICE

I certify that, on December 15, 2023, I served the attached document on counsel of record for all parties via electronic filing.

 /s/ *Donald W. Kiel*

# JOINT APPENDIX

## Table of Contents

## VOLUME I

Notice of Appeal to U.S. Court of Appeals for the Third Circuit
(ECF 75) …………………………………………………………………… A000001 – 2

Order of the District Court on Cross-Motions for Summary Judgment
(ECF 74) .....................................................................................A000003 – 4

Redacted Opinion of the District Court on Cross-Motions for Summary
Judgment (ECF 77) ....................................................................A000005 – 21

## VOLUME II (Filed Under Seal)

## Part A (A000022 – A000649)

Unredacted Opinion of the District Court on Cross-Motions for Summary
Judgment (ECF 73) .................................................... A000022 – 38

GEA Mechanical Notice of Motion for Summary Judgment
(ECF 57) ...................................................................... A000039 – 42

GEA Mechanical Proposed Order Granting Summary Judgment
(ECF 57-55)................................................................A000043 – 44

Brief of GEA Mechanical in Support of Its Motion for Summary Judgment
(ECF 57-1)....................................................................A000045 – 88

GEA Mechanical's Statement of Material Facts Not in Dispute in Support
of Its Motion for Summary Judgment (ECF 57-2) ............... .……A000089 – 120

Certification of Donald W. Kiel in Support of GEA Mechanical's Motion
for Summary Judgment (ECF 57-3)...........................................A000121 – 129

Stipulation Regarding Allocation (Kiel Cert., Exhibit 1)
(ECF 57-4) .................................................................................A000130 – 138

Plaintiff's Responses and Objections to Interrogatories by Defendants
Continental and AIIC (Kiel Cert., Exhibit 2) (ECF 57-5) ..............A000139 – 155

Thornton Complaint and Demand for Jury Trial (Kiel Cert., Exhibit 3)
(ECF 57-6).................................................................................A000156 – 171

Transcript of the Deposition of Stuart Weinstein
(Kiel Cert., Exhibit 4) (ECF 57-7) ................................................A000172 – 207

Report of Defendants' Expert Witness, Elizabeth O'Neill
(Kiel Cert., Exhibit 5) (ECF 57-8). ...............................................A000208 – 220

Thornton Verdict Form (Kiel Cert., Exhibit 6) (ECF 57-9). ..........A000221 – 223

Final Judgment by Judge in the Thornton Action
(Kiel Cert., Exhibit 7) (ECF 57-10) ...............................................A000224 – 227

Thornton Settlement Agreement and General Release
(Kiel Cert., Exhibit 8) (ECF 57-11) ...............................................A000228 – 239

Transcript of the Deposition of Jamieson Greig
(Kiel Cert., Exhibit 9) (ECF 57-12) ...............................................A000240 – 304

Letter from Jamieson Greig, Apr. 7, 2011
(Kiel Cert., Exhibit 10) (ECF 57-13) .............................................A000305 – 307

Letter from Pamela L. Labaj, Mar. 4, 2009
(Kiel Cert., Exhibit 11) (ECF 57-14) .............................................A000308 – 310

Letter from Casey A. Rigby, July 20, 2011
(Kiel Cert., Exhibit 12) (ECF 57-15) .............................................A000311 – 317

Transcript of the Deposition of Defendant's Corporate Witness, Timothy Brady
(Kiel Cert., Exhibit 13) (ECF 57-16) .............................................A000318 – 362

Email chain from Casey A. Rigby
(Kiel Cert., Exhibit 14) (ECF 57-17) .............................................A000363 – 367

Letter from Jamieson Greig, Aug. 6, 2019
(Kiel Cert., Exhibit 15) (ECF 57-18)  ............................................A000368 – 421

Letter from Jamieson Greig, Aug. 5, 2019
(Kiel Cert., Exhibit 16) (ECF 57-19) .............................................A000422 – 425

Transcript of the Deposition of Defendants' Corporate Witness,
Thomas Barriball
(Kiel Cert., Exhibit 17) (ECF 57-20) .............................................A000426 – 481

Email from Yvette Pappoe, Sept. 13, 2019
(Kiel Cert., Exhibit 18) (ECF 57-21) .............................................A000482 – 483

Email from Yvette Pappoe, Sept. 13, 2019
(Kiel Cert., Exhibit 19) (ECF 57-22) .............................................A000484 – 486

Email from Joseph C. Safar, Sept. 13, 2019
(Kiel Cert., Exhibit 20) (ECF 57-23) .............................................A000487 – 488

Email from Tara L. Pehush, Sept. 15, 2019
(Kiel Cert., Exhibit 21) (ECF 57-24) .............................................A000489 – 492

Email from Dan NiCastro, Sept. 24, 2019
(Kiel Cert., Exhibit 22) (ECF 57-25) .............................................A000493 – 495

Letter from James M. Gardner, Sept. 16, 2019
(Kiel Cert., Exhibit 23) (ECF 57-26) .............................................A000496 – 498

Letter from Richard Merritt, Sept. 20, 2019
(Kiel Cert., Exhibit 24) (ECF 57-27) .............................................A000499 – 506

Letter from James M. Gardner, Sept. 24, 2019
(Kiel Cert., Exhibit 25) (ECF 57-28) ...........................................A000507 – 509

Letter from Jamieson Greig, Jan. 7, 2020
(Kiel Cert., Exhibit 26) (ECF 57-29) ...........................................A000510 – 578

Stipulation Regarding Authenticity and Completeness of
AIIC Policy (Kiel Cert., Exhibit 27) (ECF 57-30).........................A000579 – 609

Stipulation Regarding Authenticity and Completeness of
Continental Policies  (Kiel Cert., Exhibit 28) (ECF 57-31)...........A000610 – 649

## Part B (A000650 – A001711)

Stipulation Regarding Authenticity and Completeness of Hartford Policies
(Part 1 of 2)
(Kiel Cert., Exhibit 29) (ECF 57-32 to 57-37) ...........................A000650 – 1711

## Part C (A001712 – A002913)

Stipulation Regarding Authenticity and Completeness of Hartford Policies
(Part 2 of 2)
(Kiel Cert., Exhibit 29) (ECF 57-32 to 57-37) ..........................A001712  – 2913

## Part D (A002914 – A004109)

Transcript of the Deposition of Plaintiff's Expert Witness, Elizabeth O'Neill
(Kiel Cert., Exhibit 30) (ECF 57-38) ..........................................A002915 – 2989

Transcript of the Deposition of Plaintiff's Expert Witness, Bernd G. Heinze
(Kiel Cert., Exhibit 31) (ECF 57-39) ..........................................A002990 – 3119

AIIC's Response to Plaintiff's First Set of Interrogatories
(Kiel Cert., Exhibit 32) (ECF 57-40) ..........................................A003120 – 3141

Continental's Second Supplemental Response to Plaintiff's
First Set of Interrogatories
(Kiel Cert., Exhibit 33) (ECF 57-41) ..........................................A003142 – 3165

Plaintiff's First Set of Interrogatories
(Kiel Cert., Exhibit 34) (ECF 57-42) ..........................................A003166 – 3194

Hartford's Amended Responses and Objections to Interrogatory Nos.
37, 43, 44, and 47 of GEA Mechanical's First Set of Interrogatories
(Kiel Cert., Exhibit 35) (ECF 57-43) ..........................................A003195 – 3199

Plaintiff's Second Supplemental Set of Requests for Production of
Documents (Kiel Cert., Exhibit 36) (ECF 57-44) .......................A003200 – 3210

AIIC's Response to Plaintiff's Second Supplemental Set of Requests for
Production of Documents
(Kiel Cert., Exhibit 37) (ECF 57-45) ..........................................A003211 – 3215

Continental's Response to Plaintiff's Second Supplemental Set of
Requests for Production of Documents
(Kiel Cert., Exhibit 38) (ECF 57-46) ..........................................A003216 – 3220

Hartford's Responses and Objections to Plaintiff's Second Supplemental Set of
Requests for Production of Documents
(Kiel Cert., Exhibit 39) (ECF 57-47) ..........................................A003221 – 3231

Email from John Maloney, dated July 12, 2021
(Kiel Cert., Exhibit 40) (ECF 57-48) ..........................................A003232 – 3234

Report of Defendants' Expert Witness, Bernd G. Heinze
(Kiel Cert., Exhibit 41) (ECF 57-49) ..........................................A003235 – 3274

Rebuttal Report of Defendants' Expert Witness, Bernd G. Heinze
(Kiel Cert., Exhibit 42) (ECF 57-50) ..........................................A003275 – 3288

Rebuttal Report of Defendants' Expert Witness, Elizabeth O'Neill
(Kiel Cert., Exhibit 43) (ECF 57-51) ..........................................A003289 – 3300

Affidavit of Marc P. Kunen
(Kiel Cert., Exhibit 44) (ECF 57-52) ..........................................A003301 – 3304

Loss Run Generated by Hartford
(Kiel Cert., Exhibit 45) (ECF 57-53) ..........................................A003305 – 3311

Hartford's Responses and Objections to Plaintiff's First Set of Interrogatories
(Kiel Cert., Exhibit 46) (ECF 57-54) ..........................................A003312 – 3359

Defendants' Notice of Motion for Summary Judgment
(ECF 58) ..................................................................................A003360 – 3361

Defendants' Proposed Order Granting Motion for Summary Judgment
(ECF 58-40)..............................................................................A003362 – 3363

Brief in Support of Defendants' Motion for Summary Judgment and In
Opposition to Plaintiff's Motion for Summary Judgment
(ECF 58-1)................................................................................A003364 – 3431

Statement of Material Facts Not in Dispute in Support of Defendants' Motion for
Summary Judgment (ECF 58-2)................................................A003432 – 3453

Defendants' Response to Plaintiff's Statement of Material Facts Not in Dispute in
Support of Plaintiff's Motion For Summary Judgment and Defendants'
Counterstatement of Material Facts
(ECF 58-3)................................................................................A003454 – 3476

Certification of Christopher K. Kim (ECF 58-4) .........................A003477 – 3483

Affidavit of Richard Merritt (ECF 58-39)....................................A003484 – 3489

Affidavit of Michael J. Vick in the Thornton Action
(Kim Cert., Exhibit A) (ECF 58-5) .............................................A003490 – 3493

Letter from Ashley L. Harrison to Pamela J. Labaj, July 2, 2009
(Kim Cert., Exhibit B) (ECF 58-6). ............................................A003494 – 3502

*Johnson* Action Summons and Complaint
(Kim Cert., Exhibit C) (ECF 58-7) ............................................A003503 – 3527

Transcript of the Deposition of Michael Haslup
(Kim Cert., Exhibit D) (ECF 58-8). ...........................................A003528 – 3610

Letter from Ashley L. Harrison to Pamela J. Labaj, March 9, 2009
(Kim Cert., Exhibit E) (ECF 58-9) ............................................A003611 – 3613

Letter from Pamela J. Labaj to Ashley L. Harrison, March 16, 2009
(Kim Cert., Exhibit F) (ECF 58-10)............................................A003614 – 3616

Email chain containing an email from Pamela J. Labaj, April 23, 2009
(Kim Cert., Exhibit G) (ECF 58-11). ..........................................A003617 – 3619

Letter from Joseph Hovermill to Ashley L. Harrison, June 16, 2009
(Kim Cert., Exhibit H) (ECF 58-12). ..........................................A003620 – 3623

Email chain containing an email from Joseph Hovermill to Michael
Haslup, August 31, 2009 (Kim Cert., Exhibit I)
(ECF 58-13).… ..................................................................A003624 – 3634

Email chain between Jamieson Greig and Casey Rigby,
January 14, 2011 (Kim Cert., Exhibit J) (ECF 58-14)................A003635 – 3638

Email from Jamieson Greig, May 4, 2011 (Kim Cert.,
Exhibit K) (ECF 58-15)...........................................................A003639 – 3640

Email chain containing emails from Casey Rigby and Jamieson Greig
(Kim Cert., Exhibit L) (ECF 58-16). ..........................................A003641 – 3644

Email chain containing an email from Casey Rigby, Aug. 8, 2011
(Kim Cert., Exhibit M) (ECF 58-17)............................................A003645 – 3647

Email chain containing an email from Joseph Hovermill,
Oct. 18, 2011 (Kim Cert., Exhibit N) (ECF 58-18)......................A003648 – 3652

Email chain between Casey Rigby and Jamieson Greig, Jan. 6,
2012 (Kim Cert., Exhibit O) (ECF 58-19) ..................................A003653 – 3655

Thornton Action Summons and Complaint
(Kim Cert., Exhibit P) (ECF 58-20) ...........................................A003656 – 3686

Transcript of the Deposition of Charles E. Thornton in Thornton Action
(Kim Cert., Exhibit Q) (ECF 58-21)... ........................................A003687 – 3751

Email from Elizabeth Quisling to Jamieson Greig, April 5, 2017
(Kim Cert., Exhibit R) (ECF 58-22). ..........................................A003752 – 3754

Order of Referral to Mediation in Thornton Action
(Kim Cert., Exhibit S) (ECF 58-23). ..........................................A003755 – 3758

Notices of Voluntary Dismissal in Connection with the Thornton Action
(Kim Cert., Exhibit T) (ECF 58-24)............................................A003759 – 3762

Proposals for Settlement in Connection with the Thornton Action

(Kim Cert., Exhibit U) (ECF 58-25) ...........................................A003763 – 3771

Confidential Settlement Agreement between Thornton Plaintiffs and Pall
Corporation (Kim Cert., Exhibit V) (ECF 58-26).......................A003772 – 3779

Notices of Voluntary Dismissal in Connection with the Thornton Action
(Kim Cert., Exhibit W) (ECF 58-27) ..............................................A003780 – 3782

Collateral Source Payments in the Thornton Action
(Kim Cert., Exhibit X) (ECF 58-28) ...........................................A003783 – 3784

Email chain containing emails from Michael Haslup, June 14,
2019 and June 15, 2019 (Kim Cert., Exhibit Y) (ECF 58-29)....A003785 – 3786

GEA Mechanical's Coverage Complaint
(Kim Cert., Exhibit Z) (ECF 58-30)............................................A003787 – 3803

*Kriz* Complaint (Kim Cert., Exhibit AA) (ECF 58-31)...   ............A003804 – 3821

Letter from Elizabeth Quisling to various insurers, October 7, 2020
(Kim Cert., Exhibit BB) (ECF 58-32). ........................................A003822 – 3825

Letter from Richard Merritt to Jamieson Greig, October 9, 2020
(Kim Cert., Exhibit CC) (ECF 58-33)..........................................A003826 – 3829

Letter from Richard Merritt to Jamieson Greig, October 28, 2020
(Kim Cert., Exhibit DD) (ECF 58-34)..........................................A003830 – 3837

Email chain between Richard Merritt and Jamieson Greig
(Kim Cert., Exhibit EE) (ECF 58-35). ........................................A003838 – 3847

Email from David Kochman to Richard Merritt and Jamieson Greig,
February 18, 2021 (Kim Cert., Exhibit FF) (ECF 58-36). ..........A003848 – 3850

Email from David Kochman to Richard Merritt and Jamieson Greig,
August 18, 2021 (Kim Cert., Exhibit GG) (ECF 58-37). ............A003851 – 3854

Rebuttal Report of Plaintiff's Expert Witness, Michael N. Weathersby
(Kim Cert., Exhibit HH) (ECF 58-38)..........................................A003855 – 3888

Excerpts of certain retrospective premium invoices issued by
Hartford to GEA from 1999 to present
(Kim Cert., Exhibit II) (ECF 58-41)............................................A003889 – 3939

Unpublished Decision of the Superior Court of New Jersey, Law Division,
Bergen County, in *D'Andrea Constr. Co. v. Old Republic Gen. Ins. Corp.*,
Docket no. BER-L-23-13, March 26, 2019
(Kim Cert., Exhibit JJ) (ECF 58-42) .........................................A003940 – 3981

Plaintiff GEA Mechanical's Reply Brief in Further Support of Its Motion
for Summary Judgment and In Opposition to Defendants' Motion for
Summary Judgment (ECF 59).................................................A003982 – 4027

Plaintiff GEA Mechanical's Response to Defendants' Statement of
Material Facts Not in Dispute, Plaintiff's Counterstatement of Material
Facts, and Plaintiff's Response to Defendants' Counterstatement of

Material Facts (ECF 59-1). ......................................................A004028 – 4072

Declaration of Jamieson Greig in Support of Plaintiff's Motion for Summary Judgment and In Opposition to Defendants' Motion for Summary Judgment (ECF 59-2) ...............................................................A004073 – 4078

Defendants' Reply Brief In Further Support of Motion for Summary Judgment (ECF 60). ................................................................A004079 – 4103

Defendants' Response to Plaintiff's Counterstatement of Material Facts (ECF 60-1)................................................................................A004104 – 4109

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., <br><br> Plaintiff, <br><br> v. <br><br> FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD FIRE INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, AND WELLFLEET NEW YORK INSURANCE COMPANY (AS SUCCESSOR TO ATLANTA INTERNATIONAL INSURANCE COMPANY), <br><br> Defendants. | Docket No.: 2-20-cv-09741-BRM-ESK <br><br> Hon. Brian R. Martinotti, U.S.D.J. <br> Hon. Edward S. Kiel, U.S.M.J. <br><br> **Notice of Appeal to the U.S. Court of Appeals for the Third Circuit** |

Notice is hereby given that plaintiff GEA Mechanical Equipment US, Inc. ("GEA Mechanical") appeals to the United States Court of Appeals for the Third Circuit from the Judgment of the United States District Court, District of New Jersey, entered in this action on May 11, 2023, which denied GEA Mechanical's Motion for Summary Judgment and Granted Defendants' Motion for Summary Judgment. *See* ECF 74; ECF 73.

**A000001**

Dated: June 9, 2023        Respectfully submitted,

**K&L GATES LLP**
Attorneys for Plaintiff

By: _____
Donald W. Kiel (NJ Bar No. 014371982)
Donald.Kiel@klgates.com
K&L GATES LLP
One Newark Center
Tenth Floor
Newark, New Jersey 07102-5252
973-848-4000
-and-
Joseph C. Safar (admitted *pro hac vice*)
Erin D. Fleury (admitted *pro hac vice*)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
412-355-6500

*Attorneys for Plaintiff,*
*GEA Mechanical Equipment US, Inc.*

A000002

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

GEA MECHANICAL EQUIPMENT US, INC.,

Plaintiff,

v.

FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD FIRE INSURANCE COMPANY, WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY), and CONTINENTAL INSURANCE COMPANY,

Defendants.

Case No. 2:20-cv-09741 (BRM) (ESK)

**ORDER**

**THIS MATTER** is opened to the Court on Plaintiff GEA Mechanical Equipment US, Inc.'s ("GEA Mechanical") Motion for Summary Judgment (ECF No. 57) pursuant to Federal Rule of Civil Procedure 56. Defendants Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, First State Insurance Company (collectively "Hartford") the Continental Insurance Company ("Continental"), and Wellfleet New York Insurance Company, as successor to Atlanta International Insurance Company's ("AIIC") (together, with Hartford and Continental, "Defendants") jointly-filed an Opposition and Cross-Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 58). GEA Mechanical filed an Opposition to Defendants' Motion and Reply in further support of its Motion. (ECF No. 59.) Defendants also filed a Reply in further support of their Motion. (ECF No. 60.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal

**A000003**

Rule of Civil Procedure 78(b), for the reasons set forth in the accompanying Opinion and for good cause having been shown,

**IT IS** on this 11th day of May 2023,

**ORDERED** that GEA Mechanical's Motion for Summary Judgment (ECF No. 57) is **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 58) is **GRANTED**. This matter can be marked **CLOSED**.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., <br><br> Plaintiff, <br><br> v. <br><br> FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD FIRE INSURANCE COMPANY, WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY), and CONTINENTAL INSURANCE COMPANY, <br><br> Defendants. | Case No. 2:20-cv-09741 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff GEA Mechanical Equipment US, Inc.'s ("GEA Mechanical")
Motion for Summary Judgment (ECF No. 57) pursuant to Federal Rule of Civil Procedure 56.
Defendants Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, First
State Insurance Company (collectively "Hartford"), the Continental Insurance Company
("Continental") and Wellfleet New York Insurance Company, as successor to Atlanta International
Insurance Company's ("AIIC") (together, with Hartford and Continental, "Defendants") jointly-
filed an Opposition and Cross-Motion for Summary Judgment pursuant to Federal Rule of Civil
Procedure 56. (ECF No. 58). GEA Mechanical filed a Response to Defendants' submission on
October 21, 2022. (ECF No. 59.) Defendants filed a Reply in further support of their Motion on
October 21, 2022. (ECF No. 60.) Having reviewed the submissions filed in connection with the

Motion[1] and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, GEA Mechanical's Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

## I.    BACKGROUND

This is an action for insurance coverage, wherein GEA Mechanical seeks indemnification from Defendants for liability GEA Mechanical incurred in connection with an underlying lawsuit, *Thornton v. Alfa Laval, Inc., et al.*, No. 17-6018, 2019 WL 6437261 (Fla. Cir. Ct. June 24, 2019) (the "Thornton Action"). Defendants, or their predecessors, issued certain primary or excess general liability policies (the "Policies") to GEA Mechanical's predecessor, Centrico, Inc. ("Centrico"),[2] covering various periods from May 15, 1979 to December 31, 1995, which are relevant to this action. (ECF No. 57-2, ¶ 1.) The parties have stipulated to key terms of the Policies.[3] (*See* ECF No. 57, Exs. 27–29.)

Generally, Defendant Hartford's Primary Policies required notice of any "occurrence"[4] to be provided "as soon as practicable." (*Id.* ¶ 31.) They further required notice of a claim or suit to

---

[1] The Court also considered the parties' submissions (ECF Nos. 71, 72) on the purported supplemental authority, *31-01 Broadway Assocs., LLC v. Travelers Cas. & Sur. Co*., 2023 WL 2518779 (App. Div. Mar. 15, 2023).

[2] The parties do not dispute that GEA Mechanical is a successor to Centrico, and therefore entitled to the same rights and obligations under the Policies as Centrico. (ECF No. 57-2 ¶ 4; ECF No. 58-3 ¶ 4.)

[3] The parties have also entered into a stipulation regarding the method for allocating indemnity costs incurred and paid by GEA Mechanical in connection with the settlement of the Thornton Action. (*Id.* ¶ 21; ECF No. 57-2, App'x 1.)

[4] There is no dispute regarding whether the circumstances of the underlying action qualified as an "occurrence" under the provisions of the relevant policies.

2

be provided "immediately." (*Id.*) The insured was also mandated to cooperate with the carrier, including participating in settlements, obtaining evidence, and going to trial. (*Id.*) The Excess Policies of First State, Continental and AIIC required notice of an "occurrence" or of a claim or legal proceeding "as soon as practicable" when the carrier was "reasonably likely" to be involved in said proceedings. (*Id.*) In this case, Defendants have each disclaimed coverage on the grounds that GEA Mechanical's notice of the underlying action was unreasonably late.

In March 2017, Charles and Constance Thornton filed the Thornton Action, alleging bodily harm as a result of an alleged exposure to asbestos-containing brakes and clutches contained in centrifuges or separators used to separate plasma from blood, which were sold by Centrico to Charles Thornton's employer. (*Id.* ¶¶ 7, 10.) The earliest date Charles Thornton could have been exposed to GEA Mechanical's products was May 15, 1979. (*Id.* ¶ 11.)

On or about December 4, 2018, during a court-ordered mediation, the Thorntons made a ███████ settlement demand and GEA Mechanical countered with a ███████ offer. (*Id.* ¶ 13; ECF No. 58-3 ¶¶ 12–13.) The Thorntons terminated the mediation. (*Id.*) On or about June 3, 2019, GEA Mechanical made another offer of ███████, which the Thorntons did not accept. (ECF No. 57-2 ¶ 15; ECF No. 58-3 ¶ 15.) On or about June 14, 2019, GEA Mechanical made another offer of ███████, which the Thorntons also did not accept. (*Id.* ¶ 16.) The Thornton Action went to trial in June 2019. (ECF No. 57-2 ¶ 17.) On June 17, 2019, the jury returned a verdict against GEA Mechanical in the amount of $70.1 million in compensatory damages. (*Id.* ¶ 17.) A final judgment was entered against GEA Mechanical for that amount on June 19, 2019. (*Id.*) While post-trial motions in the Thornton Action were pending, on September 24, 2019, the Thorntons and GEA Mechanical entered into a settlement agreement, wherein GEA Mechanical agreed to

A000007

pay ██████████ in exchange for a release of all claims associated with the Thornton Action. (*Id.* ¶¶ 18–19.)

On August 5 and 6, 2019, contemporaneous with the filing of this coverage action, GEA Mechanical notified Hartford and AIIC of the Thornton Action. (*Id.* ¶ 22; ECF No. 58-3 ¶ 22.) After entry of the judgment, but prior to the settlement, GEA Mechanical provided Hartford and AIIC with information about the proceedings, and invited their participation in post-trial motions, appeals, and settlements, in which neither participated nor objected. (*Id.* ¶¶ 23-24.) However, during the same period, Hartford and Resolute Management Inc. ("Resolute"), on behalf of AIIC, denied coverage under their Policies, citing, in part, that GEA Mechanical breached the notice and cooperation provisions under their Policies. (*Id.* ¶ 25; ECF No. 58-3 ¶ 25.) GEA Mechanical did not provide notice of settlement of the Thornton Action to Continental[5] until January 7, 2020, after the settlement occurred. (ECF No. 57-2 ¶ 26.) Continental similarly denied coverage based on the late notice. (*Id.*)

As discussed, GEA Mechanical initiated this coverage action in the Superior Court of New Jersey, Law Division, on August 6, 2019 (ECF No. 1), and it was removed to this Court on July 31, 2020. GEA Mechanical filed a motion for summary judgment, seeking indemnification from Defendants for liability incurred in connection with the Thornton Action (ECF No. 57), and Defendants cross-moved for summary judgment, arguing that indemnification is barred as a matter of law by the late-notice doctrine. The Court addresses both motions below.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5] Resolute is also the claims-handling agent for Continental. (*Id.* ¶ 27.)

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's

5

**A000009**

claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

6

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co*., 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting S*iegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## III. DECISION

### A. GEA Mechanical's *Prima Facie* Case

GEA Mechanical argues there is no genuine issue of material fact regarding its *prima facie* case and requests this Court grant summary judgment in its favor. (ECF No. 57-1 at 10-11.) Specifically, GEA Mechanical states there is no dispute among the parties regarding: (1) the existence and key terms of the relevant Policies; (2) the Thornton Action involving damages resulting from bodily injury occurring during the relevant Policy periods; (3) GEA Mechanical's settlement of the Thornton Action in the amount of ███████; or (4) the appropriate allocation of the ███████ among Defendants. (*Id.*) Accordingly, GEA Mechanical claims it has met its

7

**A000011**

burden for summary judgment, and there is no genuine issue of material fact with respect to its *prima facie* case for coverage. (*Id.*) Defendants do not dispute same. The Court agrees that there is no genuine issue of material fact regarding the points set forth above. Instead, the central focus of the parties' motions, and the issue determinative to the outcome of this decision, is whether Defendants' late-notice defense is meritorious as a matter of law.

### B. Defendants' Late-Notice Defense

GEA Mechanical argues Defendants have failed to meet the high burden on insurers seeking to avoid coverage obligations based on a late-notice defense because they fail to establish GEA Mechanical: (1) gave untimely notice with respect to Defendants' Policies; and (2) failed to identify any concrete evidence of appreciable prejudice. (ECF No. 57-1 at 11–37.) Specifically, GEA Mechanical maintains Defendants AIIC, Continental and First State cannot demonstrate notice was untimely because they failed to present evidence the Thornton Action was "reasonably likely" to reach the layer of their Excess Policies. (*Id.* at 34–36.) Further, GEA Mechanical argues Defendants have failed to submit evidence that Defendants would have defeated the claims in the Thornton Action, or would have otherwise handled the litigation, trial or settlement differently had notice been provided. (*Id.* at 11–33.)

Defendants submit GEA Mechanical's claims are barred by GEA Mechanical's failure to provide notice to Defendants of the Thornton Action until after entry of the verdict and final judgment, and request denial of GEA Mechanical's summary judgment motion, and instead, judgment as a matter of law in Defendants' favor. (ECF No. 58-1 at 19–60.) Defendants argue GEA Mechanical's late notice of the occurrence and litigation constitutes "bad faith" and consequently negates the "appreciable prejudice" requirement of the standard. (*Id.* at 22–35.)

A000012

However, even if a showing of appreciable prejudice is required, Defendants contend they have successfully established that prong of the standard, as a matter of law. (*Id.* at 36–41.)

In opposition to Defendants' motion and in further support of its summary judgment motion, GEA Mechanical argues New Jersey law requires a factual showing of appreciable prejudice, which Defendants have failed to establish, and does not account for any presumptions or exceptions. (ECF No. 59-1 at 3-30.) GEA Mechanical also posits Defendants failed to establish the first element of the late-notice defense, claiming its notice to Defendants was timely. (*Id.* at 30–33.)

In further support of their motion, Defendants contend GEA Mechanical's claims are barred by its failure to provide notice until after a jury verdict and final judgment. (ECF No. 60 at 3–20.) Because GEA Mechanical failed to provide timely notice of the litigation to Defendants, and because Defendants were appreciably prejudiced by GEA Mechanical's failure to provide timely notice, as a matter of law, GEA Mechanical's Motion for Summary Judgment is denied, and Defendants' Motion for Summary Judgment is granted.

      1.  <u>Timely Notice</u>

Generally, an insurance carrier may not forfeit its coverage obligations unless there is: (1) proof of a breach of the notice provision; and (2) a likelihood of appreciable prejudice.[6] *Cooper v. Gov't Emps. Ins. Co.*, 237 A.2d 870, 874 (N.J. 1968); *Morales v. Nat'l Grange Mut. Ins. Co.*, 423 A.2d 325, 327 (N.J. Super. Ct. Law Div. Oct. 15, 1980). Notice provisions are intended to provide insurance carriers with "adequate opportunity to investigate claims," *Morales*, 423 A.2d at 329, including the opportunity to "form an intelligent estimate of its rights and liabilities, to afford it an

---

[6] The same standards apply to an alleged breach of a cooperation clause. *Hager*, 942 A.2d at 164; *Haardt v. Farmer's Mut. Fire Ins. Co. of Salem Cnty.*, 796 F. Supp. 804, 809 (D.N.J. 1992); *Prudential Prop. & Cas. Ins. Co. of N.J. v. Nardone*, 752 A.2d 859 (N.J. Sup. Ct. Law Div. 2000).

opportunity for investigation, and to prevent fraud and imposition upon it," *Trico Mortgage Co. v. Penn Title Ins. Co.*, 657 A.2d 890, 894 (N.J. Super. Ct. App. Div. 1995).

There are two sets of policies at issue here, with different notice requirements. First, the Hartford Primary Policies require GEA Mechanical to provide notice of an occurrence "as soon as practicable." (ECF No. 57-2 at ¶ 31a.) In the event a claim or suit is filed against the insured, the Primary Policies require notice be provided to Hartford "immediately." (*Id.*) Next, as to the Excess Policies of First State, Continental, and AIIC, each of these Excess Policies requires notice of an occurrence, defined under the Policies, that is "reasonably likely" to involve the company, "as soon as practicable." (*Id.* at ¶ 31b-d.) "[L]ike notice" is required for any claims or legal proceedings commenced on account of such occurrence. (*Id.*).

The phrase "as soon as practicable" has been interpreted by New Jersey courts to mean "within a reasonable time," which "depends on the facts and circumstances of the particular case, and is ordinarily a factual issue for resolution by the jury unless the facts are undisputed and different instances cannot reasonably be drawn therefrom." *Sagendorf v. Selective Ins. Co. of Am.*, 679 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1996) (citations omitted). A mere "lapse of time 'is not determinative.'" *Id.* at 95. In fact, "in one case[,] a delay in notification of three weeks from the accident could be deemed unreasonable under the circumstances, but in another case[,] a six-year delay in notification could create a fact question about prejudice to the carrier." *Id.* (citing *Miller v. Zurich Gen. Acc. And Liability Ins. Co.*, 115 A.2d 597, 601 (N.J. Super. Ct. App. Div. 1955); *Hatco Corp. v. W.R. Grace & Co.*, 801 F. Supp. 1334, 1371-73 (D.N.J. 1992)). The "reasonable time" standard "is only amenable to resolution by the court on summary judgment where 'the facts are undisputed and different inferences cannot reasonably be drawn therefrom.'"

10

**A000014**

*CSR Ltd. v. Cigna Corp.*, 2006 WL 436113, *18 (D.N.J. 2006) (quoting *Sagendorf*, 679 A.2d at 94).

It is undisputed that GEA Mechanical failed to provide notice to Defendants of the occurrence and litigation until August of 2019 and January of 2020, after trial was complete and the jury returned over a $70 million verdict. (*Id.* at ¶¶ 22, 26.) The Thornton Action had been filed in March of 2017 and proceeded to trial in June of 2019. (*Id.* at ¶¶ 7, 17.) It is clear that GEA Mechanical's failure to provide notice to its primary insurance carriers of the occurrence in this case for two-and-a-half years falls far short of the "as soon as practicable" requirement in the Primary Policies. It is even clearer that GEA Mechanical's notice to Hartford two months *after* the trial had concluded fails to constitute "immediate" notice of the legal proceedings. GEA Mechanical has failed to provide, and the Court has not found, any case law where a court has deemed notice provided after a jury verdict "reasonable." Accordingly, the Court finds GEA Mechanical breached the notice provisions set forth in the Primary Policies.

GEA Mechanical argues the analysis of whether notice was timely requires the Court to consider whether it acted reasonably and in good faith. (ECF No. 59-1 at 32-33.) The Court disagrees. The language GEA Mechanical relies upon in *Cooper* is inapplicable here. In *Cooper*, the issue concerned whether the insured-plaintiffs gave the carrier notice "as soon as practicable" where the plaintiffs were in an accident in 1962, but failed to notify the carrier of the *occurrence* until receiving notice of the resulting lawsuit two years later. 237 A.2d at 871. The Court refused to deny the plaintiffs policy protection because they acted "reasonably and in good faith" in failing to report the occurrence, which they believed to be trivial, until the resulting lawsuit was commenced. *Id.* Here, GEA Mechanical failed to give notice of the actual lawsuit for over two years, as opposed to the initial occurrence, which may or may not have resulted in a claim. The

11

lawsuit undoubtedly implicated the Primary Policies and required an immediate notification. There is no "good faith" excuse for failing to comply with those Primary Policy conditions.

This Court next considers whether GEA Mechanical violated the terms of the Excess Policies as a matter of law. GEA Mechanical was required to notify the excess carriers of both an occurrence and resulting litigation "as soon as practicable," but only those "reasonably likely" to implicate the relevant policies. Whether GEA Mechanical's notice to the excess carriers was timely depends on what point in the litigation it became "reasonably likely" that the Excess Policies would be implicated. GEA Mechanical argues notice to the excess carriers was only required upon GEA Mechanical's "likely" liability reaching more than $7.3 million.[7] (ECF No. 57-1 at 34-36.) Because the Thornton Action plaintiffs' pre-trial settlement demands never exceeded ████████, GEA Mechanical contends the litigation was not "reasonably likely" to implicate the excess policies prior to the entry of the $70 million verdict. (*Id.*) Conversely, Defendants argue a living mesothelioma asbestos claim, with a lone-target defendant and a plaintiff-friendly district, with a settlement demand of ████████ in excess of the Primary Policies' $1 million limits, unquestionably meets the "reasonably likely" standard. (ECF No. 60 at 4-5.)

While there is no clear standard set forth in the case law as to when an excess policy is "reasonably likely" to "involve" the carrier, the undisputed facts of this case clearly support Defendants' position that the Excess Policies were "reasonably likely" to be implicated by the Thornton Action well before GEA Mechanical provided notice of the occurrence and litigation. The Thornton Action was filed in March of 2017. (ECF No. 57-2 at ¶ 7.) GEA Mechanical engaged

---

[7] This number represents the amount required, based upon a post-Thornton Action allocation amongst the parties, to trigger the lowest attachment point of any Excess Policy.

**A000016**

in settlement discussions with the Thorntons on several occasions prior to trial, including on December 4, 2018, when the Thorntons made a ██████ settlement demand, and on June 14, 2019, when GEA Mechanical ultimately countered with a ██████ offer. (*Id.* at ¶¶ 3-6.) The Thornton Action went to trial in June 2019, and on June 19, 2019, a final judgment was entered against GEA Mechanical in the amount of $70.1 million. (*Id.* at ¶ 17.) In August 2019, GEA Mechanical notified Hartford and AIIC of the litigation. (*Id.* at ¶ 22.) Both denied coverage. (*Id.* at ¶ 25.) In September 2019, GEA Mechanical settled with the Thorntons for ██████ in exchange for the release of all claims. (*Id.* at ¶¶ 18-19.) In January 2020, GEA Mechanical provided notice to Continental. (*Id.* at ¶ 26.) Continental also denied coverage. (*Id.*)

Given the Thornton plaintiffs' ██████ demand, coupled with Defendants' last-ditch ██████ counteroffer, in the face of the Primary Policies' $1 million limit, and considering other relevant and undisputed facts of this case including the nature of injury, the failed pre-trial settlement negotiations, and an upcoming trial, it is clear to this Court that GEA Mechanical breached its notice obligations to its excess carriers, and denied them a meaningful opportunity to participate. To hold otherwise would ignore the language of the Policies and change the provision from "reasonably likely" to involve the carriers to a near certainty. Such an interpretation would be contrary to the clear language of the documents.

Further, the Court finds it notable that GEA Mechanical similarly failed to timely provide notice of the occurrence and lawsuit to its primary insurance carriers, who were thereby unable to provide a competent defense on behalf of the excess insurers. To relieve the primary insurers of their obligation to cover the costs of GEA Mechanical's late notice, but to hold the excess insurers to a different standard, who were similarly deprived of the primaries' ability to mitigate potential

**A000017**

damages, is inequitable. Accordingly, under the specific facts and circumstances of this case, this Court finds, as a matter of law, GEA Mechanical breached its notice obligations to Defendants.

    2. <u>Appreciable Prejudice</u>

As for the second prong, the burden of proof for demonstrating prejudice is on the insurer, and the prejudice must be "actual," rather than speculative. *Morales*, 423 A.2d at 329. It would be "unfair" for an insured to lose insurance coverage "where there is no likelihood the insurer was prejudiced by the policy breach." *KnightBrook Ins. Co. v. Tandazo-Calopina*, 275 A.3d 474, 480 (N.J. Super. Ct. App. Div. 2022). In resolving whether "appreciable prejudice" exists, the insurer must prove: (1) "substantial rights have been irretrievably lost" by virtue of the insured's failure to notify the carrier in a timely fashion and (2) the insurer would have had a "the likelihood of success . . . defending against the accident victim's claim" had there been no breach. *Hager v. Gonsalves*, 942 A.2d 160, 163 (N.J. Super. Ct. App. Div. 2008) (quoting *Sagendorf*, 679 A.2d at 715); *KnightBrook*, 275 A.3d at 480. An insurer need only establish one of the two variables to disclaim an obligation to provide coverage. *Hager*, 942 A.2d at 169.

Under the first variable, an insurer must demonstrate "irretrievable loss of substantial rights related to coverage determinations by an insurer." *KnightBrook*, 275 A.3d at 480–81. For example, in *Hager*, the insurance carrier was appreciably prejudiced under the first variable by the insured's failure to cooperate when the breach resulted in the insurance company's inability to investigate, fact-find, and ultimately determine whether the relevant policy provided coverage to the driver of the car, whose identity was disputed. 942 A.2d at 162. Under the second variable, an insurer must show it would likely have succeeded in the defense of the personal injury claim had the insurance contract not been breached. *KnightBrook*, 275 A.3d at 482. Where a carrier can show that it was deprived of the opportunity to defend against a claim and there was some likelihood the carrier

14

**A000018**

would have prevailed had it been noticed properly, the carrier should not be responsible for the judgment against the insured. *Morales*, 423 A.2d at 330.

"[Not] every notice provision in an insurance setting can be discarded in favor of an 'appreciable prejudice' requirement." *Gazis v. Miller*, 892 A.2d 1277, 1282 (N.J. 2006). There is a significant difference between cases where notice was simply delayed and cases where notice was "delayed until *after* a case was tried or settled." *D'Andrea Constr. Co. v. Old Republic Gen. Ins. Co.*, BER-L-0023-13 (N.J. Super. Ct. Law Div. 2019), *aff'd*, No. 18-5126, 2020 WL 6479048 (N.J. Super. Ct. App. Div. 2020). Where an excess insurance carrier did not receive notice of a claim until seven years after the underlying accident and four years after a settlement, the New Jersey court found the "substantial delay in providing notice . . . [was] without excuse or explanation" and "it [could] not be seriously contended that there was no prejudice" to the insurer. *Id.*; *see also Am. Centennial Ins. Co. v. Warner-Lambert Co.*, 681 A.2d 1241, 1246, n.2 (N.J. Super. Ct. Law Div. 1995) (finding appreciable prejudice where the insurance carrier "irretrievably lost" its opportunity to defend the case and participate in settlement discussions when the carrier was not advised of the litigation until after a judgment was entered); *Martin v. Fireman's Fund Ins. Co.*, 2011 WL 1584333, *2 (N.J. Super. Ct. App. Div. 2011) (finding appreciable prejudice where the insured failed to notify his insurance of the accident until four years after the occurrence and until after the court entered a default judgment in the underlying action because the carrier "lost its opportunity to intervene"). This Court is not aware of any New Jersey decision refusing to find appreciable prejudice where notice was provided after the entry of a verdict, judgment or settlement.[8] *See D'Andrea*, BER-L-0023-13 ("[N]one of the prior New Jersey cases involved

---

[8] GEA Mechanical cites to instances where the Court declined to find appreciable prejudice when notice was provided after *default* judgments, which are decidedly different than final judgments, and further still, from the facts and circumstances of this case.

notice delayed until after a case was tried or settled."). However, courts in other jurisdictions have found that failure to notify a carrier of a claim or lawsuit until after an adverse judgment effectively abrogates all of the carrier's contractual rights, constituting prejudice. *See Prince George's Cnty v. Local Gov. Ins. Trust*, 879 A.2d 81, 100 (MD 2005).

There is no reasonable dispute GEA Mechanical's failure to provide notice and to cooperate with its insurers until after settlement negotiations, trial, and a jury verdict of $70.1 million appreciably prejudiced its insurers. Defendants were deprived completely of any opportunity to participate in the defense of the Thornton Action until after a verdict and judgment was entered. Where "notice has been given after the entry of judgment, it cannot reasonably be argued that the carrier has not been prejudiced." *Morales*, 423 A.2d at 329–30. The carrier has "lost the opportunity to make a prompt investigation of the accident, to depose parties and others, to appear at trial and cross-examine witnesses, and to present evidence in its insureds behalf." *Id.* While in some cases, there remains a question of whether those rights were "irretrievably lost," under these circumstances, reasonable minds cannot disagree that Defendants were irreversibly deprived of any meaningful participation in this case. *See id.* at 330. As in *D'Andrea*, to the extent the *Gazis* Court held New Jersey law does not require every notice provision be discarded in favor of an appreciable prejudice requirement, "then the notice requirement in this case should not." *D'Andrea*, *supra*. Defendants have clearly established they were appreciably prejudiced by GEA Mechanical's failure to provide timely notice of the Thornton Action to Defendants, as a matter of

16

**A000020**

law.[9] Accordingly, GEA Mechanical's sole cause of action for breach of insurance contract cannot be sustained.

## IV. CONCLUSION

For the reasons set forth above, GEA Mechanical's Motion for Summary Judgment (ECF No. 57) is **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 58) is **GRANTED**. This matter can be marked **CLOSED**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: May 11, 2023

---

[9] Because the Court finds Defendants have successfully established an entitlement to the late-notice defense, and therefore, judgment as a matter of law in their favor, GEA Mechanical's remaining arguments regarding the merits of Defendants' other affirmative defenses, counterclaims and expert opinions will not affect the Court's ultimate decision, and therefore need not be addressed in this Opinion.