IN THE

# United States Court of Appeals for the Third Circuit
## No. 23-2062

---

## GEA MECHANICAL EQUIPMENT US, INC.,

*Appellant,*

*vs.*

## FIRST STATE INSURANCE COMPANY, ET AL.,

*Appellees.*

---

*On appeal from the final order entered in the United States District Court for the District of New Jersey dated May 11, 2023, at No. 2:20-cv-09741*

---

## REPLY BRIEF OF APPELLANT

---

Donald W. Kiel (NJ Bar # 014371982)
One Newark Center
Tenth Floor
Newark, New Jersey 07102-5252
973-848-4000 (telephone)
973-848-4001 (facsimile)
Donald.Kiel@klgates.com

Joseph C. Safar (PA Bar # 78205)
Erin D. Fleury (PA Bar # 320545)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
412-355-6500 (telephone)
412-355-6501 (facsimile)
Joseph.Safar@klgates.com
Erin.Fleury@klgates.com

**K&L Gates LLP**

Counsel for Appellant GEA Mechanical Equipment US, Inc.

# TABLE OF CONTENTS

**Page**

I.    ARGUMENT ..................................................................... 1

    A.    The Insurers Misrepresent Plainly Disputed Facts .................. 2

    B.    Breach of the Excess Policies' Notice Provisions ................... 5

    C.    The District Court Misapplied New Jersey's Appreciable-
        Prejudice Law ......................................................... 10

        1.    The Purpose of New Jersey's Appreciable-
            Prejudice Requirement ............................................. 10

        2.    The District Court Overlooked and Misapplied New
            Jersey's Appreciable-Prejudice Precedent ................... 15

            i.    There Is No Justification to Distinguish
                *Chemical Leaman* and the Other Cases
                Involving Notice After a Claim Was Resolved ...... 16

            ii.    The District Court Also Misapplied
                *Knightbrook* ......................................................... 19

            iii.    *D'Andrea* Does Not Compel a Different
                Result ................................................................. 23

II.    CONCLUSION .............................................................. 26

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Am. Centennial Ins. Co. v. Warner-Lambert Co.*,
  681 A.2d 1241 (N.J. Super. Law Div. 1995) .........................................24

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
  68 F.3d 658, 684 (3d Cir.), *reh'g granted and opinion
  vacated on other grounds,* 68 F.3d 685 (3d Cir. 1995), *and
  superseded,* 89 F.3d 976 (3d Cir. 1996)................................................12

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
  817 F. Supp. 1136 (D.N.J. 1993), *aff'd in part and remanded
  on other grounds,* 89 F.3d 976 (3d Cir. 1996)........................................17

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
  89 F.3d 976 (3d Cir. 1996) ...........................................................*passim*

*Cooper v. Gov't Emps. Ins. Co.*,
  237 A.2d 870 (N.J. 1968) ..............................................................*passim*

*CSR Ltd. v. Cigna Corp.*,
  No. 95-2947 (HAA), 2006 WL 436113 (D.N.J. 2006)..............................8

*D'Andrea Constr. Co. v. Old Republic Gen. Ins. Corp.*,
  BER-L-23-13 (N.J. Super. Law Div. 2019).................................20, 23-25

*D'Andrea Constr. Co. v. Old Republic Gen. Ins. Corp.*,
  No. A-5126-18T2, 2020 WL 6479048 (N.J. Super. App. Div.
  2020)...................................................................................................25

*Farmers Ins. Exch. v. Hallaway,*
  564 F. Supp. 2d 1047 (D. Minn. 2008) .................................................16

*Gazis v. Miller*,
  874 A.2d 591 (N.J. Super. App. Div. 2005), *aff'd,* 892 A.2d
  1277 (N.J. 2006) ..................................................................................14

*Gazis v. Miller*,
  892 A.2d 1277 (N.J. 2006) ............................................................14, 25

*Gen. Refractories Co. v. First State Ins. Co.*,
  855 F.3d 152 (3d Cir. 2017) ................................................................. 22

*Hatco Corp. v. W.R. Grace & Co.*,
  801 F. Supp. 1334 (D.N.J. 1992).........................................................7-8

*HM Holdings, Inc. v. Aetna Cas. & Sur. Co.*,
  712 A.2d 645 (N.J. 1998) ................................................................ 7, 14

*Ingram v. Experian Info. Sols., Inc.*,
  83 F.4th 231 (3d Cir. 2023) ................................................................. 22

*Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.*,
  88 F. Supp. 2d 360 (D.N.J. 2000).........................................................12

*KnightBrook Ins. Co. v. Tandazo-Calopina*,
  275 A.3d 474 (N.J. Super. App. Div. 2022)..................... 1, 15, 19-23, 26

*Morales v. National Grange Mut. Ins. Co.*,
  423 A.2d 325 (N.J. Super. Law Div. 1980) ................... 15, 18-19, 22, 24

*New Prime v. Fed. Ins. Co.*,
  2023 WL 4604547 (W.D. Mo. 2023)..................................................... 16

*N.J. Dep't of Env't Prot. v. DiFlorio*,
  No. L-2070-02, 2007 WL 4553046 (N.J. Super. App. Div.
  2007)........................................................................................ 11-12, 15

*Transportes Ferreos de Venezuela II CA v. NKK Corp.*,
  239 F.3d 555 (3d Cir. 2001) ................................................... 12, 18, 23

*Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*,
  No. CV 14-4410, 2016 WL 3769747 (D.N.J. 2016).................. 15, 18, 25

*United States v. Abreu*,
  32 F.4th 271 (3d Cir. 2022) ................................................................. 22

*Whelan v. Armstrong Int'l Inc.*,
  231 A.3d 640 (N.J. 2020) .................................................................... 17

## Other Authorities

N.J. Rule 1:36-3........................................................................................ 23

## I.  <u>ARGUMENT</u>

The Insurers rely on misleading narratives based in their own allegations, not undisputed facts, and on inapposite cases under foreign, non-New Jersey law. Stripped of misdirection, the Insurers' arguments boil down to a single incorrect proposition: That notice provided to an insurer after a verdict (but before a final settlement) should always be presumed late and appreciably prejudicial and thus automatically result in a forfeiture of coverage as a matter of law. *See* Brief for Appellees ("Dkt. 35").

Such a rule, however, is directly contrary to New Jersey's late-notice law. This Court should reject the Insurers' efforts to re-write New Jersey law and to explain away the District Court's failure to address or correctly apply relevant New Jersey authorities, like *Cooper*, *Chemical Leaman*, and *Knightbrook*, all of which are contrary to the rule the Insurers advocate. The Insurers provide no justification for this Court to depart from the well-settled New Jersey rule that: "An insurer that seeks to disclaim coverage based upon untimely notice from its insured under an occurrence-based policy <u>must</u> demonstrate that it has suffered 'appreciable prejudice.'" *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 996 (3d Cir. 1996) (emphasis added). This showing cannot be through a presumption.

The District Court erred by overlooking key precedent, erred in applying New Jersey's appreciable-prejudice law, and inappropriately drew

inferences against GEA Mechanical based on disputed facts. For all the reasons set forth in GEA Mechanical's Brief for Appellant ("Dkt. 22")[1] and herein, this Court should vacate/reverse the District Court's order.

### A.    The Insurers Misrepresent Plainly Disputed Facts

In arguing that the District Court correctly granted summary judgment in their favor, the Insurers repeatedly mischaracterize and then rely on inferences from "facts" that were clearly disputed. The Insurers assert GEA Mechanical lacked good faith and intentionally withheld providing notice in order to "play with house money." Dkt. 35, at 33, 42. These inferences are unsupported by the factual record. In fact, the only admissible evidence of GEA Mechanical's subjective motivations showed GEA Mechanical provided notice to the wrong insurers in mistaken good faith. Dkt. 22, at 13-15 (discussing the "good faith effort … to identify potentially relevant insurers and to notify all such insurers of the Thornton claim."). At best, a fact issue exists, and the District Court erred by deciding that fact issue on a motion for summary judgment.

In an effort to reframe GEA Mechanical's good-faith conduct as malicious, the Insurers falsely claim GEA Mechanical's general counsel, Jamieson Greig, was "extensively involved" in the prior *Johnson* case. Dkt. 35, at 11. The Insurers cite only their own Statement of Material Facts without acknowledging that GEA Mechanical specifically denied this "fact"

---

[1] All capitalized terms herein have the same meaning as in Dkt. 22.

and disputed that Mr. Greig had "extensive" involvement in *Johnson*. A004034, ¶ 18 (GEA Mechanical's Response to Insurers' SOMF). Indeed, it would have been impossible for Mr. Greig to be "extensively involved" in *Johnson* since he was hired by GEA Mechanical <u>five months after</u> *Johnson* was dismissed. *Id.*[2]

The Insurers also assert as "facts" that they would have "drawn from their wealth of experience and knowledge" or taken "a more aggressive approach to [pre-trial settlement] to avoid a trial[.]" Dkt. 35, at 48 (citing Insurers' SOMF ¶¶ 99-101). Once again, such "facts" (really speculation) are disputed. *See* A004051-55 (GEA Mechanical's denials of ¶¶ 99-101). There is no reason to assume the Insurers, if notified earlier, would have done anything differently in *Thornton* than what they <u>actually did</u> in *Johnson* or *Mazzaia*. The Insurers do not refute that, in those cases, Hartford never provided strategic input, never shared information or insight or otherwise "brought [its] extensive experience to bear," and never engaged in any discussions whatsoever regarding settlement or litigation strategy. Dkt. 35, at 11-14 (discussing Hartford's limited response to prior actions). Nor did the Insurers proffer evidence showing actions they took to defend any other comparable cases, despite vaguely claiming to have "extensive

---

[2] The Insurers' briefing is replete with other examples of mischaracterizations and/or reliance on disputed facts. *Compare* Dkt. 35, at 9 (claiming that after the initial *Thornton* mediation in 2018, GEA Mechanical "made no effort to settle until the eve of trial"), *with id.* at 17 (acknowledging GEA Mechanical tried to engage in further settlement negotiations in May 2019).

experience" and "data as to tens of thousands of prior asbestos claims." *Id.* at 21.

Instead, the Insurers took the position that they could not "speculat[e] about what could have been[,]" *id.* at 49, but that is, at least in part, because of their own claim-handling decisions after receiving notice. Critically, the Insurers could have become involved in the defense, subject to a reservation of rights on late notice, for post-trial proceedings and settlement. Doing so would have given them an opportunity to investigate whether they had been appreciably prejudiced by the proceedings up to that point. The Insurers instead chose to deny coverage and not become involved.

The Insurers' brief refers to the $70,102,000 verdict more than a dozen times but mentions the amount of the final settlement only once. The jury verdict was not the final resolution of *Thornton* nor is it the amount for which GEA Mechanical seeks coverage. Indeed, the significant reduction of liability between the verdict and settlement suggests that (a) the Thorntons were likely not confident the runaway verdict would survive post-trial motions or appeal; and (b) the Insurers (or their claims handlers) had an opportunity, which they declined, to get involved and take actions that could have potentially eliminated any prejudice (e.g., obtaining a new trial). The Insurers chose instead to deny coverage and speculate about what they might have done if involved earlier.

The Insurers' speculation does not meet their burden under New Jersey law of setting forth "concrete evidence" of the actions they would have taken to change the result. There is an ample factual record on which a reasonable fact finder could conclude the Insurers, even if notified earlier, would have acted just as Hartford did in *Johnson* and *Mazzaia*—doing nothing more than issuing reservation of rights letters, approving Miles & Stockbridge as defense counsel, and otherwise sitting back, observing, and doing nothing proactive to resolve the claims—all leading to the same unfortunate trial result.

## B.    <u>Breach of the Excess Policies' Notice Provisions</u>

The Excess Policies' notice provision only requires notice that is "reasonably likely" to implicate each Excess Policy. Under New Jersey law, the Insurers bear the burden of persuasion with regard to whether notice was late. *Cooper v. Gov't Emps. Ins. Co.*, 237 A.2d 870, 874 (N.J. 1968). Here, the Insurers argue the Thornton Action was "reasonably likely" to implicate all of the Excess Policies based on a series of vague, conclusory assertions that the Thornton Action presented "significant risk;" that the type of claim "often has higher settlement value;" and that there was a "possibility of a large jury verdict[.]" Dkt. 35 at 51-52. The Insurers offered no evidence attempting to quantify such risk, provided no analysis or allocation applying such a quantification to the various attachment points of the different Excess Policies, and did not consider at all the timing of when

certain facts became known.[3] Indeed, there is nothing in the factual record to suggest if, or when, the liability for *Thornton* became "reasonably likely" to exceed $7.3 million.

At the same time, the Insurers do not dispute that liability would need to exceed $7.3 million in order to implicate the lowest-attaching Excess Policies nor do they dispute that certain of the Excess Policies were <u>never</u> implicated, even by the "record-breaking" $70,102,000 verdict. Dkt. 22, n.61 (discussing that, based on the agreed-upon allocation, several of the Excess Policies were not even implicated by the verdict amount). Given this, the District Court's sweeping holding that no reasonable jury could conclude that some or all of the Excess Policies were not "unquestionably" implicated highlights the flaws in the District Court's holding and rewrites the Excess Policies to entirely remove the "reasonably likely" language.

---

[3] The Insurers misleadingly claim GEA Mechanical is arguing the law "requires a court to determine the exact moment in time at which an excess policy" may be implicated. Dkt. 35, at 49-50. GEA Mechanical does not contend that the analysis requires identification of "the exact moment in time" but an insurer cannot suffer prejudice before notice is due and so the appreciable-prejudice analysis must be constrained by when notice became due, which turns on when each policy was "reasonably likely" to be implicated.

This is especially true where, as here, the Insurers' alleged prejudice focuses on what they would have done to pursue settlement during a mediation in 2018, which was long before several of the factors the District Court identified as indicia of when notice became due (e.g., GEA Mechanical's final settlement offer and the "upcoming trial," both of which did not occur until June 2019). The District Court's analysis conflated this timing and ignored the Insurers' burden.

Rather than pointing to record evidence supporting their position (on an affirmative defense), the Insurers improperly seek to shift the burden to GEA Mechanical, claiming the policyholder bears the burden to show it conducted a "deliberate" analysis to subjectively conclude the Excess Policies were not "reasonably likely" to be implicated.[4] Dkt. 35, at 49-58. This is a new argument not raised by the Insurers below (nor by the District Court) and, tellingly, the Insurers fail to identify a single New Jersey case suggesting that the policyholder bears the burden of proving it performed a subjective allocation analysis.

The Insurers rely solely on cases not applying New Jersey law, which are inapposite, for their argument.[5] Courts applying New Jersey law, however, have made it clear that the "reasonably likely" language sets forth an <u>objective</u> standard, not a subjective standard.[6] *Hatco Corp. v. W.R.*

---

[4] Such a requirement would be contrary to the law of the case. The Insurers previously sought to compel discovery of privileged documents including, *inter alia*, GEA Mechanical's counsel's subjective "evaluation and analysis of the claims and the settlement demands[,]" ECF 19, at 29:10-15, but the District Court held that such subjective analysis was "not … relevant" to the late-notice inquiry. *Id.* at 38:24-39:2.

[5] For example, the Insurers cite multiple cases applying New York law but the New Jersey Supreme Court has held that the late-notice "laws of New Jersey and New York are in conflict" and the "[a]pplication of New York's law, would interfere with the public policy reflected in New Jersey's law[.]" *HM Holdings, Inc. v. Aetna Cas. & Sur. Co.*, 712 A.2d 645, 648-49 (N.J. 1998).

[6] Even if a subjective standard applied, GEA Mechanical did not subjectively believe *Thornton* was "reasonably likely" to implicate the Excess Policies pre-trial because GEA Mechanical "believe[d] that it did not have records of historical Centrico coverage until shortly after the verdict." A000152; *see also*

*Grace & Co.*, 801 F. Supp. 1334, 1370-71 (D.N.J. 1992) (explaining that a typical notice provision requiring notice an insured "may reasonably conclude … is likely to involve this policy" "sets out an objective standard"); *CSR Ltd. v. Cigna Corp.*, No. 95-2947 (HAA), 2006 WL 436113, *18 (D.N.J. 2006) (unpublished) (explaining that a "reasonable" standard is an objective standard that "ordinarily constitutes a factual question for the jury"). Indeed, even the Insurers recognized "[t]he notice provisions in the Excess Policies do not provide such a subjective notice standard." A003426.

The Excess Insurers also argue that "GEA ignores that it did not provide notice to its Primary Insurers either." Dkt. 35, at 50. The Insurers do not, because they cannot, identify any policy language tying the "reasonably likely" excess notice trigger to whether notice was given to the Primary Insurers. *See* A0000100-02, ¶ 31(b-d) (Excess Policies' notice provisions). The Excess Insurers seek to rewrite the Excess Policies to be stricter than what the notice provisions actually require. This is contrary to *Cooper*'s holding that notice provisions should be interpreted as broadly "as [their] language will permit." *Cooper*, 237 A.2d at 873. Whether an excess insurer was protected by a primary insurer's defense of an underlying claim speaks to whether the excess insurer suffered appreciable prejudice, not

---

A004073 ("GEA Mechanical did not intentionally withhold notice of the Thornton Action to Defendants.").

when notice was due. *Id.* at 873 (rejecting that "prejudice is relevant to determining whether the notice given satisfied the policy provision").

The Insurers claim "the Primary Insurers … would have defended the Thornton Action[.]" Dkt. 35, at 51. As discussed in Section I.A, that is, at minimum, a disputed question of fact considering the Primary Insurers were on notice of two earlier claims, *Johnson* and *Mazzaia*, and did <u>nothing</u> to substantively contribute to the defense of those cases, choosing instead to allow GEA Mechanical to defend the case with the same law firm as it used in *Thornton*.

Ultimately, both the District Court and the Insurers acknowledge that the Excess Policies would not be implicated unless and until the reasonably likely liability for *Thornton* exceeded $7.3 million. The Insurers should have offered, and the District Court should have required, some factual showing of when the Thornton Action was "reasonably likely" to exceed that amount. The District Court erred by making factual inferences in favor of the moving party based solely on inconclusive, vague assertions concerning the type of asbestos claim or the settlement course of dealings. A reasonable jury could have easily reached the opposite conclusion based on the record. Indeed, some of the Excess Policies were never implicated, not even by the "record-setting" *Thornton* verdict, so it is hard to conceive how a reasonable jury could conclude that such policies were "reasonably likely" to be implicated at all, yet that is precisely what the District Court concluded in granting the Insurers' motion for summary judgment.

### C. The District Court Misapplied New Jersey's Appreciable-Prejudice Law

With regard to GEA Mechanical's arguments that the District Court erred in determining that appreciable prejudice exists as a matter of law based solely on the notice timing and the resulting loss of claims-handling rights, the Insurers' rebuttal boils down to variations of the same theme: that the Insurers should be excused, as a matter of law, from their burden to establish that they were, in fact, substantively harmed by the notice timing (i.e., that they suffered appreciable prejudice).

The District Court accepted the Insurers' argument without addressing the many cases, including binding precedential cases, precluding such an approach. The Insurers now seek to do what the District Court did not, by attempting to distinguish these cases. The Insurers' proposed distinctions are inconsistent with the overwhelming weight of precedent and the public policy considerations underlying New Jersey's appreciable-prejudice rule.

### 1. The Purpose of New Jersey's Appreciable-Prejudice Requirement

The New Jersey Supreme Court first set forth the appreciable-prejudice rule in *Cooper*, 237 A.2d 870, where the Supreme Court expressly rejected a strict "classical contractual" view of an insurance policy's notice provision as a "condition precedent" and instead held that public policy supported interpreting the insurance policy as broadly "as its language will permit." *Id.* at 873. *Cooper* offered several reasons for this

approach, including because (a) insurance involves contracts of adhesion and strict enforcement resulting in a forfeiture would be "unfair to insureds" and (b) forfeitures "would disserve the public interest, for insurance is an instrument of a social policy" to compensate victims of negligence. *Id.* at 873-74.

*Cooper* did not abandon notice provisions but instead held late notice would bar coverage only if the insurer can show "a likelihood of appreciable prejudice." *Id.* at 874. By requiring a showing of "appreciable prejudice," *Cooper* balances an insurer's rights to protect itself, on one hand;[7] against (a) the unfairness to the policyholder of a forfeiture, and (b) public policy favoring compensation of victims, on the other. *Id.* at 873-74.

The appreciable-prejudice requirement balances these considerations by recognizing that, although a breach of a notice provision can hinder an insurer's ability to protect itself, a breach does not automatically mean, in and of itself, that the insurer actually suffered sufficient harm to justify a forfeiture of coverage. *N.J. Dep't of Env't Prot. v. DiFlorio*, No. L-2070-02, 2007 WL 4553046, at *8 (N.J. Super. App. Div. 2007) (unpublished) ("A carrier's burden of proof is not satisfied 'by the

---

[7] The purpose of notice provisions under New Jersey law is to protect <u>the insurer's interests</u> by providing an "opportunity to investigate the facts and circumstances that may result in the insurer's liability under the policy" and to "allow the insurer to form an intelligent estimate of its rights and liabilities … to prevent fraud and imposition upon it." Dkt. 35, at 30-31 (quotations omitted).

showing of a mere possibility of prejudice.'"). In every late-notice situation, the insurer necessarily loses some "opportunities." Thus, it becomes important to assess what rises to the level of "appreciable" prejudice.

New Jersey courts have repeatedly addressed this question and, as this Court succinctly explained, the purpose of the appreciable-prejudice requirement is to impose a forfeiture only if the insurer's:

> [P]rocedural handicap has led to disadvantageous, <u>substantive results</u>—in other words, if the insured's violation of its contract has <u>proximately caused its insurer damages</u>.

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 68 F.3d 658, 684 (3d Cir. 1995) (emphases added) (citation omitted), *reh'g granted and opinion vacated on other grounds,* 68 F.3d 685 (3d Cir.), *and superseded,* 89 F.3d 976 (3d Cir. 1996). An insurer cannot establish appreciable prejudice by only pointing to lost claims-handling rights or speculating it might have achieved a better outcome, because neither shows the insurer actually suffered such damages. *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 561 (3d Cir. 2001) ("[M]ere conjecture or suspicions may not form the basis for establishing appreciable prejudice" nor can "the mere fact that [the insurer] cannot employ its normal procedures"). Instead, the burden is on the insurer to provide "concrete evidence" to show it was actually, not just hypothetically, harmed in a material and measurable way. *Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.*, 88 F. Supp. 2d 360, 368 (D.N.J. 2000).

New Jersey courts have established a two-part test to establish appreciable prejudice, which requires the insurer to show it: (1) "irretrievably lost" "substantial rights" and (2) had a "likelihood that it would have had a meritorious defense." *Chem. Leaman*, 89 F.3d at 996. These two prongs correlate with the two ways an insurer can show it suffered "damages" as a proximate result of late notice. The first is if an insurer could have, but can no longer, show it had coverage defenses to establish the policy did not cover the claim. The second is if the insurer can show it would have achieved a better result defending the underlying claim.

The Insurers ask this Court to create an exception to the *Cooper* rule whereby insurers would no longer be required to factually establish appreciable prejudice if notice was provided after a verdict. Presuming appreciable prejudice as a matter of law based solely on the notice timing, however, is antithetical to *Cooper* because it calls for a forfeiture of coverage even if the Insurer suffered no damages. Moreover, the size of the verdict also cannot be determinative. Runaway verdicts can and do happen even in the face of a well-presented defense. This is particularly relevant here, where the Insurers identify no concrete evidence of different defenses or strategies that would have changed the outcome. Indeed, as discussed above, the Insurers chose not to get involved post-verdict, presumably because they assessed the case as an unfortunate trial outcome that they could not have changed.

In the face of the above, the Insurers make no effort to explain how their proposed approach, which amounts to a prejudice-*per-se* rule, comports with *Cooper* and its progeny. Instead, the Insurers rely on hyperbolic characterizations about the "extraordinary unfairness" and the "devastating ramifications" that would result should an insurer have to show it suffered actual harm. Dkt. 35, at 42. The New Jersey Supreme Court, however, has repeatedly reiterated that "the purpose [of] New Jersey's late-notice rule is the protection of a New Jersey policyholder." *HM Holdings*, 712 A.2d at 648 (emphases added). The specific notice timing does not change that insurance policies are contracts of adhesion or that the insurance provides compensation for victims. If an insurer did not suffer damages, a forfeiture of coverage results in an inequitable windfall to the insurer. *Gazis v. Miller*, 874 A.2d 591, 597 (N.J. Super. App. Div. 2005) (discussing the "inequity of permitting the insurer a windfall"), *aff'd,* 892 A.2d 1277, 1281 (N.J. 2006). Thus, neither the specific timing nor the size of a verdict affect the public policies *Cooper* found to disfavor forfeiture.

To be clear, GEA Mechanical is not arguing that facts regarding the progression of an underlying claim are not relevant to determining what, if any, appreciable prejudice an insurer can establish. But forsaking *Cooper* by presuming appreciable prejudice as a matter of law based solely on the timing (and the resulting "lost opportunities"), without factually establishing how the Insurers would have utilized those opportunities to achieve a better result, is inconsistent with both the purpose of New Jersey law and the

overwhelming weight of authority. Indeed, the Insurers also fail to provide persuasive justification why such an exception should apply in this particular case, which involves notice after a verdict but <u>before</u> a settlement, when the overwhelming majority of courts applying New Jersey law have required a showing of appreciable prejudice even though notice was given <u>after</u> the underlying claims were <u>fully</u> resolved through consent decrees (*Chemical Leaman*, *DiFlorio*, *Solvents Recovery*), final settlements (*National Union*, *Travelers*), or default judgments (*Morales*, *Jackson*). Dkt. 22, at 35-36.

### 2. The District Court Overlooked and Misapplied New Jersey's Appreciable-Prejudice Precedent

As discussed in GEA Mechanical's opening brief, the District Court's decision was directly at odds with *Chemical Leaman*, *Knightbrook*, and a plethora of other cases. The Insurers' efforts to distinguish these cases fail to justify reaching a conclusion directly at odds with the overwhelming weight of authority.

The Insurers' arguments that appreciable prejudice should be assumed as a matter of law because notice provided after an adverse verdict "presents the insurer with a *fait accompli*[,]" rely exclusively on cases that were not applying New Jersey law. Dkt. 35, at 39-40 (relying heavily on cases applying Maryland, California, Pennsylvania, or Texas law).[8] As discussed in Section I.C.1, the Insurers' proposed rule is

---

[8] The Insurers' cherry-picked cases ignore many contrary decisions holding that prejudice <u>cannot</u> be presumed even for notice provided after a verdict.

inconsistent with the rationale of *Cooper* and its progeny and the fact that New Jersey courts have overwhelmingly held that a loss of rights to investigate or defend a suit should not, by itself and without an actual showing of appreciable prejudice, result in a forfeiture of insurance.

Moreover, the Insurers' efforts to factually distinguish the New Jersey cases involving notice after a settlement, consent decree, or default judgment fail to reconcile their proposed line drawing with the rationale of the appreciable-prejudice rule. If courts require appreciable prejudice when an underlying claim has been fully resolved by settlement, consent decree, or default judgment, there is no justification to presume appreciable prejudice in a situation in which notice was provided to the Insurers (or their claims handlers) after an adverse verdict but before the claim was fully resolved through settlement.

i. There Is No Justification to Distinguish *Chemical Leaman* and the Other Cases Involving Notice After a Claim Was Resolved

The Insurers, for the first time on appeal,[9] attempt to distinguish *Chemical Leaman* because it involved environmental remediation liability

---

*E.g.*, *Farmers Ins. Exch. v. Hallaway*, 564 F. Supp. 2d 1047 (D. Minn. 2008) (Minnesota law) (rejecting insurer's summary judgment argument that it was prejudiced as a matter of law due to notice after a verdict); *New Prime v. Fed. Ins. Co.*, 2023 WL 4604547 (W.D. Mo. 2023) (Missouri law) (same).

[9] The Insurers previously tried to distinguish *Chemical Leaman* by erroneously claiming the "insurer 'had extensive opportunities' to defend the claim after it received notice" (*see* A003413, n.14), which was clearly inaccurate and an entirely different basis than their current argument.

and they argue notice after the insured's consent decree settlement did not constitute appreciable prejudice because the insurer could "contain costs after the imposition of a consent decree." Dkt. 35, at 36-37.

First, the insurer in *Chemical Leaman* received notice <u>four years</u> <u>after</u> the consent decree, so it is untrue that it had any opportunity to "contain costs" during those years. In fact, the insurer specifically argued it suffered appreciable prejudice on the basis that its earlier involvement in the "implementation" of the consent decree could have led to lower costs, but the court rejected that as "irrelevant to the notice inquiry of whether defendants suffered a likelihood of appreciable prejudice[.]" *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 817 F. Supp. 1136, 1159 (D.N.J. 1993), *aff'd in part and remanded on other grounds,* 89 F.3d 976 (3d Cir. 1996).

Second, the Insurers suggest *Chemical Leaman* is distinguishable because it involved strict liability claims where the insurer did not claim it could show a likelihood of a meritorious defense. Dkt. 35, at 36-38. The Insurers do not explain how this so-called difference,[10] which involved the application of the second element of the appreciable-prejudice test, supports their argument that this Court should abandon entirely an insurer's burden to show appreciable prejudice. In fact, just like the insurer in

---

[10] Of course, asbestos liability can also be assessed on a strict liability basis. *Whelan v. Armstrong Int'l Inc.*, 231 A.3d 640 (N.J. 2020) ("[M]anufacturer of a product with an asbestos-containing component can be held strictly liable[.]").

*Chemical Leaman*, the Insurers do not contend they could have achieved a defense verdict in the Underlying Action and the District Court made no findings at all regarding the meritorious-defense prong. Dkt. 22, n.44.

Third, no court applying New Jersey law has recognized either of the Insurers' proposed distinctions (including the District Court, which did not cite, let alone attempt to distinguish, *Chemical Leaman*). Instead, *Chemical Leaman* has been relied on by courts applying New Jersey law in a variety of other contexts not involving environmental consent decrees or strict liability. For example, this Court relied on *Chemical Leaman* in applying the appreciable-prejudice rule in a product liability context in *Transportes*, concluding the insurer had failed to show appreciable prejudice. *Transportes*, 239 F.3d at 561. Courts have similarly relied on *Chemical Leaman* in situations involving liability arising from the sale of medical products, requiring a showing of appreciable prejudice even when notice was provided years after the underlying claims were fully resolved. *E.g.*, *Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*, No. CV 14-4410, 2016 WL 3769747, at *5 (D.N.J. 2016) (relying on *Chemical Leaman* and rejecting insurer's arguments that appreciable prejudice was not required or should be presumed).

Similarly, the Insurers fail to explain why, when an appreciable-prejudice showing was required in *Morales* and other cases where notice was given after a default judgment, prejudice should nevertheless be presumed here when *Thornton* was competently defended (by the same

firm Hartford had previously approved). Ironically, the Insurers argue that default judgments "often can be vacated, usually resulting in only a minimal impact on an insurer's rights." Dkt. 35, at 35-36. The same, of course, can be said for large trial court verdicts (especially runaway verdicts, which are often reversed on appeal or reduced through *remittitur*). More importantly, the Insurers' argument is contradicted by the very case on which they rely, *Morales*, which was <u>not</u> a case "in which a default judgment has been vacated[.]" *Id.* at 36. *Morales* expressly refused to vacate the default judgment but nonetheless required a factual showing of appreciable prejudice. *Morales v. National Grange Mut. Ins. Co.*, 423 A.2d 325, 330 (N.J. Super. Law Div. 1980) ("It would be inappropriate to vacate the default judgment[.]"). Here, the Insurers chose not to get involved or to insist that the verdict be challenged, but instead denied coverage and left GEA Mechanical to fend for itself without the insurers so-called "expert" assistance.

ii.   The District Court Also Misapplied *Knightbrook*

As GEA Mechanical explains in its opening brief, the District Court's conclusion that appreciable prejudice can be established solely by the lost "opportunity to participate in the defense of the Thornton Action" was a clear error and inconsistent with New Jersey law, including *KnightBrook Ins. Co. v. Tandazo-Calopina*, 275 A.3d 474 (N.J. Super. App. Div. 2022), the most recent Appellate Division decision addressing appreciable prejudice.

*Knightbrook* is not the only decision holding that an insurer cannot establish the first prong of the appreciable prejudice test based solely on a loss of claims-handling rights. To the contrary, *Chemical Leaman* and all of the other decisions involving notice after a case was resolved also confirm this point, as do the many other cases explaining that an insurer must do more than show it cannot employ its normal procedures or speculate it might have achieved a more-favorable settlement. *Knightbrook*'s result is also consistent with the holding of *Cooper*, which allows for a forfeiture only if the insurer establishes appreciable prejudice (i.e., actual, as opposed to potential, harm).

Apparently recognizing *Knightbrook* is at odds with the District Court's ruling, the Insurers make several efforts to discredit *Knightbrook*. First, in a lengthy footnote, the Insurers proclaim that *Knightbrook* is "inconsistent with New Jersey law." Dkt. 35, n.17. The Insurers, however, cite only two decisions (*D'Andrea* and *Warner-Lambert*), both of which were trial court decisions predating the Appellate Division's *Knightbrook* decision. To the extent these cases conflict, a subsequent published appellate decision trumps prior trial court decisions.[11]

---

[11] This is especially true with respect to *D'Andrea*, which was unpublished and also consistent with *Knightbrook* insofar as it found appreciable prejudice based on lost coverage-determination rights. *See* Section I.C.2.iii (*D'Andrea* found appreciable prejudice based on a lost ability to establish "proofs that would defeat a loading and unloading claim," which was a coverage defense).

The Insurers also seek to distinguish *Knightbrook* on the basis that *Knightbrook* did not involve notice after a verdict and thus, according to the Insurers, did not "necessarily preclude[] the insurer from any meaningful participation in the defense of the action." *Id.* at 45. *Knightbrook* applied the appreciable-prejudice requirement in the context of a cooperation provision, not a notice provision, but the insurer in *Knightbrook* argued (as the Insurers argue here) that the insured's breach "deprived" the insurer of the opportunity to participate in the underlying defense, including the "rights to explore defenses, to call witnesses, … to determine what strategy, [and] how they would proceed in the lawsuit[.]" *KnightBrook*, 275 A.3d at 479. The Appellate Division reversed the trial court and held the insurer failed to establish an irretrievable loss of rights because, although it identified lost claims-handling rights, there was no dispute that the underlying liability fell within the policy's coverage. *Id.* at 482 ("[I]t is undisputed … the policy covered the claims in the personal injury action. Therefore, KnightBrook failed [to] demonstrate appreciable prejudice under the first [appreciable prejudice] variable[.]").

Finally, the Insurers argue this Court should not even consider *Knightbrook* because, according to the Insurers, GEA Mechanical waived its argument that the first prong of the appreciable-prejudice test cannot be established solely by lost claims-handling rights.[12] A party, however, need

---

[12] The Insurers falsely claim "[n]owhere in GEA's summary judgment submissions did it cite (much less discuss) *Knightbrook*[.]" Dkt. 35, at 45.

not cite the same legal authorities to preserve an issue for appeal. *Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 240 n.5 (3d Cir. 2023). A party may also "reframe" their arguments or "place greater emphasis on an argument or more fully explain an argument on appeal." *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 162 (3d Cir. 2017) (quotations omitted). "The ultimate question is whether the parties 'g[a]ve the District Court the opportunity to consider the argument.'" *United States v. Abreu*, 32 F.4th 271, 275 (3d Cir. 2022).

Here, the District Court clearly considered and relied on *Knightbrook*, including quoting, but then ignoring, *Knightbrook*'s holding that "an insurer must demonstrate 'irretrievable loss of substantial rights <u>related to coverage determinations by an insurer</u>.'" A000035 (emphasis added). The District Court cites *Knightbrook* more than any other case (except *Morales*) and it would be inequitable to prohibit GEA Mechanical from addressing how the District Court misapplied *Knightbrook*.

Most importantly, this argument is anything but new. GEA Mechanical relied on the same legal rule and facts and argued the first prong of the appreciable-prejudice test cannot be satisfied solely by a loss of claims-handling rights. For example:

---

GEA Mechanical cited *Knightbrook* in a supplemental letter to the District Court (ECF 72, at 3), which the District Court expressly considered in its summary judgment ruling. ECF 73, n.1 ("The Court also considered the parties' submissions (ECF Nos. 71, 72)[.]").

- GEA Mechanical included an entire section arguing that "lost opportunities" to "participate in the defense" cannot establish appreciable prejudice because those types of "'lost opportunities' constitute precisely the types of 'normal procedures in investigating and evaluating the claim' that courts have regularly held to be irrelevant in establishing appreciable prejudice." A004005-07.

- GEA Mechanical explained the first prong requires "more than the mere fact that [an insurer] cannot employ its normal procedures in investigating and evaluating the claim[.]" A000059 (citing *Sagendorf v. Selective Ins. Co. of Am.*, 679 A.2d 709 (N.J. Super. App. Div. 1996)); *see also* A000062 (citing *Transportes*, 239 F.3d 555) (same); A003992-93, n.6 (same).

- GEA Mechanical's lengthy discussion of *Chemical Leaman* explained that the Third Circuit had found no prejudice for notice provided after a consent decree by focusing on the fact the insurers had "extensive opportunities," not to participate in the defense, which had already concluded, but to "depose and cross-examine fact witnesses <u>in the coverage action</u>." A003993-94 (emphasis added).

GEA Mechanical did not waive its argument that lost claims-handling rights cannot satisfy the first prong of the appreciable-prejudice test.

### iii. *D'Andrea* Does Not Compel a Different Result

To support their extraordinary argument that this Court should create a new exception to *Cooper*'s appreciable-prejudice rule and not require insurers to factually establish appreciable prejudice, the Insurers rely primarily on inapposite trial court decisions and decisions from courts not applying New Jersey law. In particular, the Insurers rely heavily on *D'Andrea*, an unpublished and non-precedential[13] trial court decision that has never been relied on by another court, other than the District Court in

---

[13] N.J. Rule 1:36-3 ("No unpublished opinion shall constitute precedent or be binding upon any court.").

this case. *D'Andrea Constr. Co. v. Old Republic Gen. Ins. Corp.*, BER-L-23-13 (N.J. Super. Law Div. 2019) (unpublished). The District Court's reliance on *D'Andrea*, however, was precisely the problem with its ruling.

First, the District Court appears to have overlooked key precedent as a direct result of adopting *D'Andrea*'s erroneous proclamation that "[n]one of the prior New Jersey cases involved notice delayed until after a case was tried or settled." A000036-37 (quoting *D'Andrea*). This statement overlooks numerous New Jersey decisions involving notice after the underlying claims were resolved.[14] *See* Dkt. 22, at 29-36 (discussing cases). The decision in *D'Andrea* is also inapposite because it involved a dispute between two insurers.[15]

Second, the appreciable prejudice in *D'Andrea* arose from a loss of coverage-determination rights, not claims-handling rights. Specifically, the court held the insurer, Everest, was prejudiced by losing the right to develop "proofs that would defeat a loading and unloading claim," which

---

[14] The trial court in *D'Andrea*, like the District Court, cited *Morales* but failed to recognize that notice in *Morales* was provided after the claim was resolved and the insurer nonetheless had to show appreciable prejudice.

[15] *D'Andrea* held there was no public policy benefit to "straining to shift coverage" in an intra-insurer dispute because the claimant had already been paid by an insurer and, because both parties were sophisticated insurers, "no reasonable contractual expectations are disappointed or denied[.]" A003973-74, A003980. *Warner-Lambert* likewise involved a dispute between insurers and the court's ruling distinguished itself from *Cooper* based on that "unique relationship" between insurers. *Am. Centennial Ins. Co. v. Warner-Lambert Co.*, 681 A.2d 1241 (N.J. Super. Law Div. 1995).

was a coverage defense available under Everest's policy. A003980. The court concluded Everest suffered appreciable prejudice because, though Everest was able to depose one witness to investigate this coverage defense, the witnesses "acknowledged his memory of the event was not as clear as it had been[.]" A003981.

Although the trial court in *D'Andrea* arguably predicted New Jersey may recognize an exception to *Cooper*'s appreciable-prejudice requirement based solely on notice timing, no other court had ever recognized that exception.[16] On appeal, the Appellate Division ignored that portion of the decision and instead held Everest had established appreciable prejudice based solely on its lost ability "to develop proofs that would defeat a loading

---

[16] The District Court, like the *D'Andrea* trial court, cited *Gazis* for the proposition that "[not] every notice provision in an insurance setting can be discarded in favor of an 'appreciable prejudice' requirement." A000037. Even a cursory review of *Gazis*, however, shows the quoted language is taken out of the original context, which was simply recognizing that the appreciable-prejudice rule does not apply to claims-made policies, which *Gazis* distinguishes from occurrence-based policies. *Gazis v. Miller*, 892 A.2d 1277, 1280 (N.J. 2006). *Gazis* reinforced the vitality of the appreciable-prejudice rule, holding it applies even to excess occurrence-based policies. *Id.* at 1281-82.

*D'Andrea* and the District Court both rely on this single sentence from *Gazis* to suggest a much-broader exception to New Jersey's appreciable-prejudice requirement, but other courts have rejected this argument. For example, *Travelers v. Becton Dickinson* rejected an insurer's similar reliance on *Gazis* and explained, after surveying cases, there were <u>no</u> New Jersey cases discarding the appreciable-prejudice requirement outside the claims-made context. 2016 WL 3769747, at *5. Even *D'Andrea* and the District Court both ultimately concluded the insurers had shown appreciable prejudice.

and unloading claim[.]" *D'Andrea Constr. Co. v. Old Republic Gen. Ins. Corp.*, No. A-5126-18T2, 2020 WL 6479048, at *3 (N.J. Super. App. Div. 2020) (unpublished). Finding appreciable prejudice based on a loss of evidence pertaining to a coverage determination is consistent with *Knightbrook* and *Cooper*. The Insurers, however, have never argued they lost coverage-determination rights or disputed that, but for the allegedly late notice, the Policies would cover *Thornton*.

This Court should not discard decades of appreciable prejudice case law or its own prior decisions in favor of an alternative basis for a holding found in an unpublished trial court decision involving a claim of lost coverage-determination rights.

## II. **CONCLUSION**

Thus, GEA Mechanical requests that this Court vacate the District Court's order, reverse with instructions to enter summary judgment in favor of GEA Mechanical on the late-notice issue, and remand with instructions for further proceedings to resolve the remaining issues. In the alternative, GEA Mechanical requests this Court to vacate the District Court's order and to remand for further proceedings on all issues.

Dated: February 23, 2024                    Respectfully submitted,

                                            **K&L GATES LLP**


                                            /s/ *Donald W. Kiel*
                                            Donald W. Kiel (NJ Bar # 014371982)
                                            One Newark Center
                                            Tenth Floor
                                            Newark, New Jersey 07102-5252
                                            973-848-4000
                                            *- and -*
                                            Joseph C. Safar (PA Bar # 78205)
                                            Erin D. Fleury (PA Bar # 320545)
                                            K&L Gates Center
                                            210 Sixth Avenue
                                            Pittsburgh, Pennsylvania 15222-2613
                                            412-355-6500

                                            *Attorneys for Appellant,*
                                            *GEA Mechanical Equipment US, Inc.*

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that all counsel representing the appellant are members of the bar of this Court.

 /s/ Donald W. Kiel

## ELECTRONIC-FILING CERTIFICATION

I hereby certify that the attached brief as provided to the Court in electronic form includes the same text as the "hard copies" of the brief filed with the Court. I also certify that this electronic file has been scanned with JoeSandbox and Carbon Black anti-virus and malware software.

 /s/ Donald W. Kiel

## CERTIFICATION OF WORD COUNT

I certify that this brief includes 6,499 words as calculated with the word-counting feature of Microsoft Word and including the parts of the brief specified in Federal Rule of Appellate Procedure 32.

 /s/ Donald W. Kiel

## CERTIFICATE OF SERVICE

I certify that, on February 23, 2024, I served the attached document on counsel of record for all parties via electronic filing.

 /s/ Donald W. Kiel